See also 89 F.Supp. 278.

### TIVOLI REALTY, Inc. v. PARAMOUNT PICTURES, Inc., et al.

### ADELMAN v. PARAMOUNT PICTURES, Inc., et al.

### Nos. 1077, 1109.

United States District Court
D. Delaware.

March 6, 1950.

John Van Brunt, Jr. (Killoran & Van Brunt), of Wilmington, Del., Thurman Arnold (Arnold, Fortas & Porter), of Washington, D. C., and Irving L. Goldberg (Thompson, Meek & Goldberg), of Dallas, Texas, for plaintiffs Tivoli Realty, Inc. and another.

Caleb S. Layton (Richards, Layton & Finger), of Wilmington, Del., George S. Wright and Jos. Irion Worsham, of Dal-

las, Texas, for defendants Interstate Circuit, Inc. and others.

Ayres J. Stockly (Hastings, Stockly, Walz & Wise), of Wilmington, Del., for defendants Twentieth Century-Fox Film Corp. and others.

Hugh M. Morris and S. Samuel Arsht (Morris, Steel, Nichols & Arsht), of Wilmington, Del., for defendants Universal Pictures Company, Inc. and others.

Richard F. Corroon (Southerland, Berl & Potter), of Wilmington, Del., for defendants Loew's Inc. and others.

RODNEY, District Judge.

Seven of the defendants have specifically objected that a number of the interrogatories are such as to impose a tremendous burden and expense upon the defendants in obtaining the answers to such interrogatories. Five of the defendants have specifically objected to interrogatories 6 through 13, as they are numbered in the interrogatories addressed to RKO Radio Pictures, Inc. Taking these interrogatories as an example, we find the following information required:

Interrogatory 6. List all theatres located in the key run cities of the United States (over 100,000 population) in which you license feature pictures for first-run exhibition and which are not located in the immediate downtown area, stating the name of the owner and exhibitor of each theatre, whether or not the owner or exhibitor operating each theatre is affiliated with any major producer or distributor of motion pictures and the name of any such distributor-producer; and the seating capacity and night adult admission price for each theatre.

Interrogatory 7. State in what key run cities you now license or have licensed since January 1, 1946 [June 1, 1947 in Civil Action No. 1077] feature pictures for exhibition on a day and date first run policy.

(a) Name the theatres in each city in which you license pictures on such a policy, including both downtown and outlying theatres;

(b) State the seating capacity and night adult admission price of each theatre;

(c) State the name of owner and exhibitor operator of each theatre;

(d) State whether or not the owner and operator of each theatre is affiliated with a major producer or distributor of motion pictures.

Interrogatory 8. State in what key run cities you now license or have licensed since January 1, 1946 [June 1, 1947 in Civil Action No. 1077] feature pictures for exhibition on move-over runs where:

(a) The move-over theatre is affiliated with the first run theatre;

(b) The move-over theatre is not affiliated with the first run theatre.

Interrogatory 9. For each key run city in the United States, state the clearance or availability in days after first run exhibition on which you regularly license feature pictures for second run exhibition.

Interrogatory 10. For each key run city in the United States, state the clearance or availability after first run exhibition for third run exhibition.

Interrogatory 11. List the name of each theatre in Houston regularly served by you since April 4, 1934 [in Civil Action No. 1077, In Dallas since June 1, 1947]. This interrogatory also seeks further detailed information regarding each of such theatres as to availability in run and changes made in availability and run.

Interrogatory 12. List each city or town served by you out of the Dallas exchange area with a population of 20,000 or over. The interrogatory then seeks information regarding the name of theatres in each such city to which the defendants regularly license feature pictures first run, second run, and third run and the clearance intervals between the various runs.

Interrogatory 13. (Interrogatory 14 in certain of the interrogatories). In this interrogatory the defendant is required to furnish information regarding its participation in the advertising and exploiting of feature pictures during several seasons with exhibitors of those pictures in Houston or Dallas, as the case may be. The

name of the theatre, the name of the operator of the theatre, the run on which the picture was exhibited, and the extent to which such participation occurred in such instances, are inquired into.

In addition, the defendants Interstate Circuit, Inc. and Texas Consolidated Pictures, Inc. have objected, on the ground of burden and expense imposed, to Interrogatories 3, 4, 5, 6, and Interstate Circuit objects also to No. 7. These will not be specifically here set out.

The defendant, RKO Radio Pictures, in connection with the objections to these interrogatories, has filed an affidavit, the general content of which is adopted by the other defendants. This affidavit alleges that there are upwards of 100 "key run" cities in the United States having a population of over 100,000 and these cities have over 5,000 theatres; that to service these theatres and the remainder of approximately 20,000 theatres in the United States the defendant maintains 32 branch offices which exclusively keep the records necessary to answer the interrogatories and that the records in all these branch offices would have to be collected and compiled. The affidavit estimates that RKO feature pictures, during the four years inquired about, were shown in about 4,000 theatres in "key run" cities; that some 13,000 first run exhibitions were had in upwards of 500 theatres all over the country; that information as to the second or subsequent run exhibitions would run into hundreds of thousands of instances. The affidavit estimates that even this portion of the investigation would consume 10,000 to 15,000 man hours of time. The affidavit states that the investigation just mentioned would not include seating capacity, admission costs or affiliation of the various theatres, which, if not found in sources already available to the plaintiffs, would require personal and individual visits in connection with each separate theatre.

It is estimated that many additional thousands of man hours will be required to furnish information unconnected with the so called "key run" cities, and in this connection a separate affidavit was filed by Interstate Circuit, Inc. and Texas Consolidated Theatres, Inc. setting forth the labor and expense involved.

The plaintiffs insist that the interrogatories are moderate in their requests and entail no great amount of labor or expense. The defendants with equal insistence maintain that the answers entail elaborate research in 32 scattered localities and an expenditure of time reaching into many thousands of man hours and with but imperfect result. These differences are so marked in character that it is impossible to reconcile them although the court is favored with the assistance of counsel of a high character.

The court itself is without either the time or facilities to ascertain the extent of the burden and expense to be placed upon the defendants. No method is apparent to the court except the appointment of a master pursuant to Federal Rules of Civil Procedure, rule 53(a), 28 U.S.C.A., to inquire as to the availability of the information sought and the burden and expense involved. I adhere to the view expressed in Cinema Amusements v. Loew's Inc., D.C., 7 F.R.D. 318. Clearly an interrogated party must furnish relevant information which can be obtained without great labor or expense. It is equally clear to me that, desirable as discovery process may be, it should not place upon a defendant the burden of many thousand man hours of labor and the expense of many thousands of dollars. Such are the claims.

If the interrogatories remain as filed and the parties maintain their present positions, the court, after the expiration of thirty days, will consider the advisability of appointing a master to inquire as to the burden and expense of answering the demands of the plaintiffs. The court may require deposits to cover the preliminary expenses of the master and will reserve the right to finally assess the costs of the proceedings by the master as to it may seem proper after the proceedings by the master have concluded.