**AMERICAN ROCKWOOL, INC., Plaintiff,**

v.

**OWENS–CORNING FIBERGLAS CORPORATION, Defendant.**

**No. 83–39–CIV–8.**

United States District Court, E.D. North Carolina, Wilson Division.

June 13, 1985.

On Motion To Reconsider Magistrate's Order July 31, 1985.

Catharine B. Arrowood and Steven J. Levitas, Sanford, Adams, McCullough & Beard, Raleigh, N.C., for plaintiff American Rockwool, Inc.

Thomas G. Slater, Jr. and R. Noel Clinard, Hunton & Williams, Richmond, Va., Edward S. Finley, Jr., Hunton & Williams, Raleigh, N.C., for defendant Owens-Corning Fiberglas Corp.

ORDER

CHARLES K. McCOTTER, Jr., United States Magistrate.

This matter is before the Court for resolution of a discovery matter, Plaintiff's Third Motion to Compel Discovery and for Sanctions filed on March 29, 1985. At the hearing on this motion conducted on May 1, 1985, counsel advised the Court that they had substantially agreed on all matters in dispute raised by the motion to compel except the question of sanctions. Counsel reduced this to writing and presented same to the Court in the form of a consent order, which the Court entered on June 4, 1985, nunc pro tunc for May 14, 1985.

In respect to sanctions, the plaintiff seeks to recover almost $30,000 in costs and expenses incurred in its extensive efforts to discover price and sales information from the defendant. Specifically, the plaintiff seeks an order requiring the defendant to pay (a) all costs of preparing and prosecuting its Third Motion to Compel; (b) costs of counsel's trip to Toledo, Ohio, in September, 1983; (c) costs of plaintiff's second motion to compel filed February 21, 1984, as well as all other costs relating to a computer controversy; and (d) all other costs associated with efforts to get price and sales information from the defendant. The plaintiff also seeks as a sanction that the defendant be precluded from initiating further discovery and limited in discovery already noticed. To decide this motion, it becomes necessary to review the proceedings in federal court.

American Rockwool manufactures rockwool insulation, a mineral wood product used to insulate commercial and residential structures. It competes with defendant Owens-Corning in selling insulation products to producers of manufactured housing and to insulation contractors. Both American Rockwool and Owens-Corning market their insulation in loose-fill and batt form. American Rockwool brought this lawsuit alleging that Owens-Corning has engaged in unfair, predatory and anti-competitive conduct in violation of federal and state trade regulation laws. Since the institution of this action, the parties have engaged in lengthy and contested discovery.

Beginning on May 4, 1983, the plaintiff has served the defendant with five sets of interrogatories and requests for production of documents. Plaintiff has accused the defendant of systematically trying to frustrate plaintiff's discovery efforts by filing incomplete and late responses and failing to provide information when it stated it would do so. American Rockwool's most meritorious discovery complaint focuses upon the defendant's alleged abuse of Rule 33(c) in the production of voluminous documents in Toledo, Ohio, in September, 1983, in response to plaintiff's First Interrogatories Nos. 13 and 15. American Rockwool says that the defendant has other records available from which the information sought in the interrogatories can be easily gleaned with substantially less cost than that incurred by American Rockwool in trying to obtain the information from the mass records produced.

Plaintiff's First Interrogatories Nos. 13 and 15 sought (a) sales summary information by customer and product; and (b) information of each sale not made at Owens' regular price. The defendant invoked Rule 33(c) and sent plaintiff to an Ohio warehouse containing more than a million invoice documents, unsorted by customer or product. So much information was provided that the plaintiff did not have the time or resources to glean from this production the information sought.

American Rockwool asked if there was an easier way of obtaining the information it sought. Owens-Corning failed to reveal to American Rockwool that the information was available elsewhere, sorted by customer. The use of the defendant's computer to obtain the information was discussed, and plaintiff devoted much time to pursuing this aspect, including the hiring of computer experts to assist in obtaining the information. In this regard, the plaintiff filed a Second Motion to Compel. Although the Court found some merit in Owens-Corning's opposition to this motion, the Court ordered the defendant to describe the na-

ture of its computer system to American Rockwool. A hearing was scheduled for April 19, 1984, to resolve the conflicting contentions as to the cost and feasibility of providing American Rockwool with discovery through use of the defendant's computer system. This hearing was not conducted because plaintiff's counsel advised the Court that the computer search question had been resolved except as to cost, which would be later submitted to the Court for resolution in the event counsel were unable to reach agreement.[1] Ultimately, counsel were unable to agree upon a reasonable cost; however, they never resubmitted the matter to the Court.

A year and a half after the Toledo production, Owens-Corning advised American Rockwool that another source of documents was available from which American Rockwool might be able to obtain the discovery sought. In the winter of 1984–85, deposition testimony of Owens-Corning's employees began to reveal that copies of invoices are maintained at Owens-Corning's field offices, grouped by customer. On April 19, 1985, counsel for Owens-Corning revealed to American Rockwool's counsel that copies of invoices are routinely forwarded to the relevant branch office, where they are ordinarily filed by customer name.

In September, 1983, counsel for Owens-Corning was unaware of this option and had directed American Rockwool to the voluminous records in Toledo. Counsel for American Rockwool spent two days of manual search on September 19 and 20, 1983, in Toledo seeking price and sales information from these extensive records. The availability of an alternate source of records from which American Rockwool could obtain its desired discovery with much less effort and expense emphasizes the futility of the September, 1983 search.

Joseph A. Stancati, corporate counsel for Owens-Corning, supervised Owens-Corning's responses to discovery propounded by American Rockwool. He was responsible for production of invoices from Owens-Corning's official document repository in Toledo, Ohio, during the week of September 19, 1983. Stancati was advised by a person in the company knowledgeable as to their sources of documents that the invoices were maintained by Owens-Corning and were located in Toledo. Stancati was told that the invoices were kept by plant, by invoice number, and would include invoices for all products which were manufactured at the plant, including building insulation. These documents are the only complete set of invoices maintained by Owens-Corning.

■ The Court concludes that Owens-Corning abused Rule 33(c) by failing to specify its records in sufficient detail to permit American Rockwool to locate and identify as readily as Owens-Corning the records from which the answers to the interrogatories could be ascertained. Rule 33(c) provides:

> Where the answer to an interrogatory may be derived or ascertained from the business records of the party upon whom the interrogatory has been served ... and the burden of deriving or ascertaining the answer is substantially the same for the party serving the interrogatory as for the party served, it is a sufficient answer to such interrogatory to specify the records from which the answer may be derived or ascertained and to afford to the parties serving the interrogatory rea-

---

**1.** This information was communicated to the Court by telephone and in writing by Plaintiff's Response Concerning Discovery Pursuant to the Court's Order of March 16, 1984. It appears that the written communication was sent directly to me and not filed with the Clerk of Court. On numerous occasions during this litigation, counsel for both parties have submitted briefs through the use of letters which do not appear to have been filed with the Clerk of Court. In the future, memoranda and briefs will not be considered unless they are filed with the Clerk of Court.

Additionally, counsel have been copying the Court with communications among counsel which ordinarily would not be part of the record. Unless these communications pertain to a dispute which requires resolution by the Court, they are of no use to me and should not be sent to me. If a communication merits the Court's attention, then it should be filed with the Clerk of Court.

sonable opportunity to examine, audit, or inspect such records and to make copies, compilations, abstracts or summaries. *A specification shall be in sufficient detail to permit the interrogating party to locate and identify, as readily as can the parties' served, the records from which the answer may be ascertained.* (Emphasis added.)

■ Directing the opposing party to an undifferentiated mass of records is not a suitable response to a legitimate request for discovery. *Saddler v. Musicland Pickwick International, Inc.*, 31 Fed.R.Serv.2d 760 (E.D.Tex.1980). The records produced by Owens-Corning in September, 1983 were not sufficiently specified to provide the information sought.

■ A party utilizing Rule 33(c) to answer interrogatories must respond in sufficient detail to permit the interrogating party to identify readily the individual documents from which the answer may be ascertained. *Flower Mills of America, Inc. v. Pace*, 75 F.R.D. 676 (D.C.Okl.1977). In this respect, the Advisory Committee Note to the 1980 amendment to Rule 33(c) provides:

The Committee is advised that parties upon whom interrogatories are served have occasionally responded by directing the interrogating party to a mass of business records or by offering to make all of their records available, justifying the response by the option provided by this subdivision. Such practices are an abuse of the option. A party who is permitted by the terms of this subdivision to offer records for inspection in lieu of answering an interrogatory should offer them in a manner that permits the same direct and economical access that is available to the party. If the information sought exists in the form of compilations, abstracts or summaries, then available to the responding party, those should be made available to the interrogating party. The final sentence is added to make it clear that a responding party has the duty to specify, by category and location,

the records from which answers to interrogatories can be derived.

85 F.R.D. 521, 531.

■ For the purpose of Rule 33(c), a party is charged with knowledge of what its agents know and the contents of its available records. *Tivoli Realty v. Paramount Pictures*, 10 F.R.D. 201 (D.C.Del. 1950). Owens-Corning's records indexed by customer provide a more specific and concise source of information from which American Rockwool could obtain the information requested in the interrogatories as readily as Owens-Corning. In utilizing Rule 33(c), Owens-Corning was negligent in failing to advise American Rockwool of this alternate source. Negligent failure to allow reasonable discovery, if not substantially justified, may warrant sanctions. *Marquis v. Chrysler Corp.*, 577 F.2d 624 (9th Cir.1978).

Owens-Corning contends that the records produced were the only complete and accurate source of documents fully responsive to plaintiff's request. This may be so; however, plaintiff's interrogatories requested documents indexed by customer. Owens-Corning had such records available which would have allowed American Rockwool the requested discovery with substantially less effort and expense. These documents should have been produced instead of the voluminous records actually produced.

Owens-Corning's failure to advise American Rockwool of this earlier does not stem from bad faith, but from the defendant's negligence in the unawareness of the availability of its own records. Once counsel for Owens-Corning became aware of the alternate source, they immediately advised American Rockwool's counsel.

American Rockwool is entitled to an award of reasonable costs and expenses from Owens-Corning resulting from Owens-Corning's abuse of Rule 33(c). In determining this amount, the Court has considered that the discovery abuse resulted from negligence and not bad faith, that Owens-Corning's counsel provided the information to American Rockwool as soon

as it became known to counsel, and that the issues raised by American Rockwool's Third Motion to Compel, except for sanctions, were substantially resolved by counsel without court intervention. American Rockwool is entitled to the reasonable of costs and expenses of counsel's futile trip to Toledo in September, 1983. Those expenses are: $2,732.65 [2] incurred by Attorney Michael J. Anderson and $3,117.70 incurred by Sanford Adams. In respect to the Third Motion to Compel, the Court allows the following expenses: [3]

| Date | Description | Atty | Hours | Rate | Amount |
|------|-------------|------|-------|------|--------|
| 11–13–83 | Research on Rule 33(c) for motion to compel | JJB | 1.00 | 60 | 60.00 |
| 11–14–84 | Research on issue of sanctions for motion to compel; revision of Rule 33(c) section of motion to compel | JJB | 4.00 | 60 | 240.00 |
| 11–15–84 | Revising Rule 33(c) section of motion to compel; research re sanctions for motion to compel | JJB | 1.50 | 60 | 97.50 |
| 11–15–84 | Revised Rule 33(c) section of motion to compel | JJB | .50 | 60 | 30.00 |
| 11–15–84 | Revised Rule 33(c) section of motion to compel | JJB | 1.50 | 60 | 90.00 |
| 11–16–84 | Revised Rule 33(c) section of motion to compel | JJB | 1.00 | 60 | 60.00 |
| 2–26–85 | Review of additional deposition transcripts for additional documents and additions to memo in support of motion to compel | SJL | 2.00 | 70 | 140.00 |
| 3–1–85 | Revise motion to compel | CBA | 2.00 | 90 | 180.00 |
| 3–19–85 | Conference CBA; revisions to motion to compel and letter to Bernard re same | SJL | 4.50 | 70 | 315.00 |
| 3–27–85 | Motion to compel | CBA | 1.50 | 90 | 135.00 |
| 3–28–85 | Work on motion to compel | CBA | 1.00 | 90 | 90.00 |
| 3–29–85 | Complete motion to compel, memo and letter and accompanying materials | CBA | 2.00 | 90 | 180.00 |
| 4–30–85 | Preparation and revision of supplemental memo; conferences with CBA and meeting with Hunton & Williams | SJL | 4.00 | 70 | 280.00 |
| | | | | TOTAL: | $1,897.50 |

---

2. Anderson charged American Rockwool $1530 for travel time to and from Toledo. Levitas and Stancil each appear to have incurred a total travel time to and from Toledo of 7 hours. Anderson's travel time must have been substantially more. The Court cannot justify the difference, and so bases Anderson's travel time on a total of 7 hours at a rate of $65, the same rate charged by Levitas.

3. The awarded hours on some of the dates claimed are less than the hours claimed on those dates because it appears that the hours claimed were spent on matters other than the Rule 33(c) abuse. The Court has declined to award as costs and expenses a substantial number of hours claimed and worked claimed, for lack of relation or necessity to the Rule 33(c) abuse.

The above are the only costs and expenses that the Court finds are reasonable and necessary as a result of Owens-Corning's abuse of Rule 33(c) and American Rockwool's having to file its Third Motion to Compel.

Rule 37(a)(4) states that when a court grants a motion to compel, it shall require the party whose conduct necessitated the motion to pay the moving party reasonable expenses incurred in obtaining the motion, unless the opposition is substantially justified or an award would otherwise be unjust. The defendant contends that substantially all the matters in dispute raised by the Third Motion to Compel were resolved immediately after the filing of the motion and could have been so resolved without the necessity of a Motion to Compel. This contention appears correct. The affidavit of plaintiff's counsel, Catharine B. Arrowood, indicates that she began drafting this motion eight months prior to its filing. Shortly before filing the motion, she notified defendant's counsel of the substance of the impending motion. By letter to plaintiff's counsel dated March 27, 1984, defendant's counsel proposed that plaintiff delay filing the motion until they had time to properly respond to her demands and indicated the likelihood that they would be able to agree on many of the items.

Except as to the Rule 33(c) question, American Rockwool's Third Motion to Compel was unnecessary. Except as to the matter of sanctions, all matters in dispute were resolved by counsel. This resolution resulted in the entry of a consent order. Many of these matters could have been resolved in the absence of the motion to compel. The Third Motion to Compel was necessary and proper only for a resolution and award of expenses as to the Rule 33(c) abuse. Much of Owens-Corning's opposition to the matters raised by the Third Motion to Compel resulted in a narrowing of discovery requests and agreements in respect to production of discovery. Many of the items had already been produced or offered. However, Owens-Corning's opposition to the Rule 33(c) aspects of the Third Motion to Compel was not substantially justified.

American Rockwool contends that it is entitled to its costs and expenses incurred in its computer chase and filing of the Second Motion to Compel. In the Court's limited ruling on the Second Motion to Compel, I found merit in the positions of both parties. Counsel by agreement abandoned further hearing on the motion.

The Toledo record production imposed upon American Rockwool a greater burden and expense in obtaining the answers to its interrogatories than upon Owens-Corning. This resulted in the Rule 33(c) abuse. Where such occurs, the proper remedy is for the interrogating party to move under Rule 37(a) for further answer to the interrogatories. *Thomason v. Leiter*, 52 F.R.D. 290 (D.C.Ala.1971). Owens-Corning did not seek this remedy until it filed the Third Motion to Compel. The Second Motion to Compel seeking computer information was not a reasonable alternative. Accordingly, the plaintiff is only entitled to the reasonable costs and expenses of the Toledo inspection in September, 1983 and those reasonable expenditures in pursuit of the Rule 33(c) aspects of the Third Motion to Compel. In conclusion, the plaintiff is entitled to an award of costs and expenses from the defendant in the total amount of $7,747.85, payable upon the conclusion of this action.

## ON MOTION TO RECONSIDER MAGISTRATE'S ORDER

FOX, District Judge.

This matter is presently before the Court on defendant's motion to reconsider the Magistrate's June 14, 1985, order on plaintiff's third motion to compel discovery and for sanctions. This matter has been thoroughly briefed and orally argued by the parties, and is now ready for disposition.

On June 14, 1985, the Magistrate issued an order requiring the payment of

$7,747.85 by the defendant to the plaintiff; this amount represents a portion of the costs and expenses sought by the plaintiff which were incurred in its efforts to discover price and sales information from the defendant. In accordance with 28 U.S.C. § 636(b)(1)(A) and Local Rule of Practice and Procedure 63, the defendant filed a motion to reconsider this order and a memorandum in support thereof on June 24, 1985. The plaintiff responded to this motion and memorandum in its memorandum of July 8, 1985; although plaintiff did not appeal from the Magistrate's order within the ten day time limit prescribed in Local Rule 63.01, it did request that the Court award the $30,277.65 amount originally requested in its third motion to compel discovery and for sanctions, rather than the $7,747.85 amount actually awarded by the Magistrate.

After thoroughly reviewing the Magistrate's order and all filings relevant thereto, the Court finds that the Magistrate's order of June 14, 1985, is not clearly erroneous or contrary to law; furthermore, the Court finds that because plaintiff's request for an additional $22,529.00 in sanctions was not filed within the ten day period, plaintiff's request is untimely. Accordingly, the Court finds that the plaintiff is entitled to an award of costs and expenses from the defendant in the total amount of $7,747.85, to be paid by the defendant immediately.

SO ORDERED.