AMCAST INDUSTRIAL
CORPORATION, et
al., Plaintiffs,

v.

DETREX CORPORATION, Defendant.

No. S88–620 (RLM).

United States District Court,
N.D. Indiana,
South Bend Division.

July 15, 1991.

D. Jeffrey Ireland, Armistead W. Gilliam, Jr. and Ann Wightman of Faruki Gilliam & Ireland, Dayton, Ohio and Robert J. Palmer of May, Oberfell & Lorber, South Bend Ind., for plaintiffs.

James J. Shea and Arthur G. Surguine, Jr. of Hunt, Suedhoff, Borror & Eilbacher, Fort Wayne, Ind., for defendant.

## MEMORANDUM AND ORDER

ROBIN D. PIERCE, United States Magistrate.

This case is before the court on a motion to compel discovery filed by plaintiffs, Amcast Industrial Corporation ("Amcast") and Elkhart Products Corporation ("EPC"), and a motion for protective order in response thereto filed by defendant Detrex Corporation ("Detrex"). The plaintiffs' motion seeks an order compelling Detrex to produce: 1) any facts relating to this action that are contained in a memorandum from Stan Miles dated June 21, 1989; 2) writings relating to any settlement of any claims that Detrex improperly handled hazardous substances; 3) documents relating to other clean-ups involving Detrex; and 4) documents relating to the system for reporting releases of hazardous substances.

### Background

After it purchased all of the shares in EPC, what is now Amcast learned that the soil and groundwater under EPC's plant in Elkhart, Indiana was polluted with trichloroethylene ("TCE"), an industrial solvent which EPC had used for several years in manufacturing copper pipe fittings. On October 13, 1988, Amcast and EPC filed the present action against a number of defendants, including Detrex, seeking the recovery of damages to real property, together with the past and future costs resulting from the pollution. As against Detrex, in particular, the complaint presents the following general allegations:

Pursuant to an agreement between EPC and Detrex, from January 1, 1978, until September 22, 1986, Detrex sold and delivered at least 33 truck loads of liquid TCE to the Plant. These truck loads ranged in size from 1,000 gallons to 3,300 gallons. These 33 truck loads were delivered to the Plant by the Doe Defendants. Each of these truck loads was unloaded by a Detrex truck driver (a Doe Defendant) in the ordinary course of his duties on behalf of Detrex and without the supervision or assistance of EPC or any of its employees, utilizing equipment supplied by and belonging to Detrex, except that, occasionally, EPC employees would provide a hose to the Detrex truck driver (a Doe Defendant) when the hose carried on the Detrex truck could not be used. These truck loads of TCE were unloaded by the Detrex truck drivers (the Doe Defendants) into one or both of two above-ground TCE storage tanks maintained by EPC at the Plant (one of which was supplied by Detrex). (Plaintiffs' Complaint, ¶ 10).

Each time a Detrex truck driver (a Doe Defendant) unloaded a load of TCE at the Plant, he negligently spilled some TCE out upon the ground of the Plant at or near the TCE storage tanks maintained by EPC. Most of these spills involved approximately 2—5 gallons of TCE. The following two spills involved greater quantities: (a) in late June of 1980, while filling one of the TCE storage tanks at the Plant, a Detrex truck driver (a Doe Defendant) negligently over-filled the tank, causing approximately 200 to 300 gallons of TCE to flow out of the vent of the tank and onto the ground, where it destroyed approximately 138 square yards of asphalt; (b) on one occasion, after the over-fill incident, a Detrex truck driver (a Doe Defendant) failed to properly level his truck when preparing to fill the TCE storage tank at the Plant, leaving approximately 50 gallons of TCE in the tanker after the Detrex driver completed the delivery of the TCE to the Plant. After finishing his delivery, the driver pulled away without closing the valve on the tanker of his truck, negligently causing a 2″ stream of

TCE from the tanker to be discharged from the truck as it left the area of the Plant where the TCE storage tanks are located, proceeded north on the back drive of the Plant, east to Oak Street, and on north to Bristol Street. The TCE discharge stopped at Bristol Street. (Plaintiffs' Complaint, ¶ 11).

As a direct and proximate result of the TCE spills described in the preceding paragraph, TCE has entered the soil and groundwater underlying the Plant, and may be migrated to the groundwater underlying the Miles Laboratories facility located directly across from the Plant. (Plaintiffs' Complaint, ¶ 12).

TCE is a 'hazardous substance' as that term is defined in § 101(14) of the Superfund Act, 42 U.S.C. § 9601(14), a mutagen, and a suspected carcinogen. Human exposure to TCE may cause skin and eye irritation, headaches, heart disease, and liver damage. (Plaintiffs' Complaint, ¶ 13).

Each Detrex truck from which TCE was spilled as described in this Complaint was a 'facility' of which Detrex was the 'owner' and the Doe Defendants were the 'operators' as those terms are defined in Sections 101(9) and (20)(A) of the Superfund Act 42 U.S.C. § 9601(9) and (20)(A). Each such spill was a 'release' of 'hazardous substances' into the 'environment,' as those terms are defined in Sections 101(22), (14) and (8) of the Superfund Act, 42 U.S.C. §§ 9601(22), (14) and (8), as well as the 'disposal of hazardous substances at a facility' within the meaning of Section 107(a) of the Superfund Act, 42 U.S.C. § 9607(a). (Plaintiffs' Complaint, ¶ 14).

The course of dealings between EPC and Detrex as described in paragraphs 10 through 12, *supra*, constitutes an arrangement by Detrex with EPC for the disposal of hazardous substances owned or possessed by Detrex at the Plant for purposes of Section 107(a) of the Superfund Act, 42 U.S.C. § 9607(a). (Plaintiffs' Complaint, ¶ 15).

The complaint sets forth a number of theories of liability on the part of Detrex, including: strict liability under Section

107(a) of the Superfund Act, 42 U.S.C. § 9607(a); common law strict liability in tort for damages resulting from Detrex's conduct of ultra-hazardous activity with respect to the manufacture, sale and delivery of the TCE; breach of an implied provision of the agreement between Detrex and EPC for the sale and delivery of TCE, which provision would have called for Detrex to deliver the TCE without spillage and without causing any environmental hazards; vicarious liability on the part of Detrex for its drivers' negligence, their trespass upon EPC's land, and their creation of a nuisance; and Detrex's negligence in hiring and training its drivers.

### General Discovery Standards

The plaintiffs' document requests under Rule 34 of the Federal Rules of Civil Procedure are governed by the liberal standard set forth in Rule 26(b)(1), which permits discovery "regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action." That Rule provides that "[i]t is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." As the Supreme Court noted in *Oppenheimer Fund, Inc v. Sanders*, 437 U.S. 340, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978):

> [t]he key phrase in this definition—'relevant to the subject matter in the pending action'—has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case ... Consistently with the notice-pleading system established by the Rules, discovery is not limited to issues raised by the pleadings, for discovery itself is designed to help define and clarify the issues ... Nor is discovery limited to the merits of a case, for a variety of fact-oriented issues may arise during litigation that are not related to the merits.

*Id.* at 351, 98 S.Ct. at 2389, *citing Hickman v. Taylor*, 329 U.S. 495, 501, 67 S.Ct. 385, 388–89, 91 L.Ed. 451 (1947).

Thus, discovery will generally be allowed if the information sought is "relevant to the subject matter of the action and there is a reasonable possibility that [it] may provide a lead to other evidence that will be admissible." 8 C. Wright & J. Miller, Federal Practice and Procedure § 2008 at 49–50 (1970); *Bowman v. Consolidated Rail Corp.*, 110 F.R.D. 525 (N.D.Ind.1986); *People's Trust Bank v. United States*, 103 F.R.D. 519 (N.D.Ind.1983); *Weddington v. Consolidated Rail Corp.*, 101 F.R.D. 71, 73–74 (N.D.Ind.1984). At the same time, however, the scope of discovery is not without limits. "Practical considerations dictate that parties not be permitted to roam in shadow zones of relevance and to explore matter which does not appear germane merely on the theory that it might become so." *Shepard's, Discovery Proceedings in Federal Court* § 14.4 at 221 (2d ed. 1991). "The responses sought must comport with the traditional motions of relevancy and must not impose an undue burden on the responding party." *Syed v. Director, Federal Bureau of Investigation*, No. 90–1801, slip op., 1990 WL 259734 (E.D.Pa. Jan. 30, 1990) (1991 U.S.Dist. LEXIS 1163); *Robbins v. Camden City Bd. of Education*, 105 F.R.D. 49 (D.N.J.1985).

Once an objection has been raised to a Rule 34 production request, the party seeking discovery must demonstrate that the request is within the scope permitted under Rule 26(b). *See Clark v. Universal Builders, Inc.*, 501 F.2d 324, 340 (7th Cir.1974), *cert. denied*, 419 U.S. 1070, 95 S.Ct. 657, 42 L.Ed.2d 666 (1974); *Belcher v. Bassett Furniture Industries, Inc.*, 588 F.2d 904 (4th Cir.1978); *Everco Industries, Inc. v. O.E.M. Products Company*, 362 F.Supp. 204, 206 (N.D.Ill.1973); *City of Newberg, Oregon v. Ashbrook–Simon–Hartley Corp.*, No. 90–1173–FR, slip op., 1991 WL 104098 (D.Ore. May 24, 1991) (1991 U.S.Dist. LEXIS 7576); *Staff Builders of Philadelphia Inc. v. Koschitzki*, No. 88–6103, slip op., 1989 WL 71294 (E.D.Pa.1989) (1989 U.S.Dist. LEXIS 7027). "Once this showing has been made, the responding party has the burden of showing some sufficient reason why discovery should not be

allowed." *Shepard's, Discovery Proceedings in Federal Court* § 7.17 at 441 (2d ed. 1991); *see Nestle Foods Corp. v. Aetna Cas. and Sur. Co.*, 135 F.R.D. 101, 104 (D.N.J.1990).

### The Stan Miles Memorandum

According to Amcast and EPC, Stan Miles is the branch manager of Detrex's Indianapolis office, and his branch is responsible for delivering, picking-up and processing solvents throughout Indiana. Amcast indicates that Mr. Miles was the Indianapolis branch manager when the TCE spills occurred at Elkhart Products Corporation, and that most of the TCE deliveries to EPC originated from Miles' branch. Amcast notes that during his deposition, Mr. Miles testified that he had prepared a memorandum based upon an investigation of the spill at EPC, and that Detrex has since refused a written request for the Miles memorandum on the ground that it is protected by the work-product privilege. Amcast maintains that the work-product privilege does not shield discovery of facts contained in the Miles memorandum. Detrex asserts that the memorandum is protected by the attorney-client privilege and the work-product doctrine. In order that the court may be better informed in considering Detrex's claims of privilege, it is ORDERED that within ten (10) days of this date Detrex submit a copy of the Stan Miles memorandum, under seal, for the purpose of an *in camera* examination by the court.

### Writings Relating to Settlements

The next area of dispute centers on the plaintiffs' Document Request No. 51, which seeks "writings" relating to settlements of hazardous substance claims against Detrex. Although both sides have submitted extensive memoranda, the history of their dispute over this request remains somewhat unclear. In their Document Request No. 51, Amcast and EPC initially sought production of "[a]ll writings relating to settlements of any claims that Detrex improperly treated, stored, disposed of, transported, released, distributed, manufactured or sold hazardous substances."

In responses served on the plaintiffs on August 15, 1990, Detrex objected to this request on the following grounds:

Request No. 51 seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. The fact that Detrex may have been involved in other litigation, and that such litigation or claims may have been compromised, has no bearing on the alleged solvent spills at Elkhart Products Company. Also, it would be unduly burdensome and cost-prohibitive to fully comply with the breadth of Request No. 51. Moreover, Request No. 51 improperly encompasses documents protected by the work-product and attorney-client privileges. Finally, public policy dictates that offers of compromise are not generally discoverable without a showing of substantial need and/or hardship by the party requesting disclosure. For these reasons, the requested information will not be produced.

(Detrex's Motion for Protective Order, Exhibit A, p. 15). In a letter to Detrex's counsel dated November 12, 1990, plaintiffs' counsel, Ann Wightman, stated: "Plaintiffs will not pursue Request No. 51 at this time; however, Plaintiffs are not waiving their right to production of such documents." (Affidavit of Ann Wightman filed on May 13, 1991, Exhibit 1, p. 2). Although not documented in the record, the plaintiffs apparently later renewed their Request No. 51, but agreed to restrict its scope to writings relating to "settlements involving 'delivery type' spills, such as those at issue in this case." (Plaintiffs' Memorandum in Opposition to Detrex Corporation's Motion for a Protective Order, p. 7). Detrex responded by reasserting its previous objections, to which it added the following:

Without waiving this objection, Detrex states that there have been no claims (and, therefore, no settlements of claims) concerning any 'release' in a 'delivery-type' setting (such as those alleged in the present lawsuit). Also, without waiving this objection, Detrex refers plaintiffs to *Detrex Chemical Industries, Inc. v. Employers Ins. Co. of Wausau*, 681 F.Supp. 438 (N.D. Ohio, 1987). That case con-

cerned insurance coverage for certain environmental matters. The lawsuit was settled under the terms of a confidentiality agreement and, therefore, the settlement documents will not be produced.

(Affidavit of Ann Whightman filed on May 13, 1991, Exhibit 7).

Although Detrex's most recent response indicating that there have been no settlements of claims "concerning any 'release' in a 'delivery-type' setting" is accompanied by various objections, it is nevertheless apparent that Detrex has answered Request No. 51—at least the plaintiffs have not claimed that Detrex's answer is unresponsive. Rather, the plaintiffs apparently disagree with the substance of the answer, asserting that it is contradicted by the sworn deposition testimony of Mr. Miles which indicated that other "delivery-type" spills had occurred.

The court is unable to discern any conflict between Mr. Miles' testimony that other "delivery-type" spills had occurred and Detrex's response to Request No. 51, indicating that "there have been no claims (and, therefore, no settlements of claims) concerning any 'release' in a 'delivery-type' setting...." To put it simply, "releases" or "spills" are not the same as "claims," and it is entirely possible for one or more "releases" to have occurred without anyone ever having raised a claim against Detrex. Detrex has answered Request No. 51. There is no conflict between Mr. Miles' deposition testimony and Detrex's response to Request No. 51. And, even if there were a contradiction between Detrex's response and Mr. Miles' deposition testimony, that circumstance alone—that a party seeking discovery may disagree with, question or disbelieve the substance of a response—is not a recognized ground for compelling a further response.

The plaintiffs' motion to compel with respect to their Document Request No. 51 is, therefore, DENIED, and Detrex's motion for protective order with respect to that request is DENIED as moot.

### Documents Relating to Other "Clean–Ups"

■ The plaintiffs further seek to compel production with respect to their Document Request No. 52, which asks for

[a]ll writings relating to or describing any clean-ups, 'removal' actions as that term is defined in Section 101(23) of CERCLA, 'remedial action' as that term is defined in Section 101(24) of CERCLA, remedial investigation or feasibility study in which Detrex has participated or been involved.

Amcast and EPC argue that documents relating to clean-ups "may reflect Detrex's policy about clean-ups and as such, reflect a pattern of conduct on the part of Detrex concerning the clean-ups;" that "such information may establish habit evidence or lead to the discovery of admissible evidence;" and that "these documents may reflect the knowledge or notice that Detrex had concerning these incidents and therefore, affect the duty of care required of a reasonably prudent party in Detrex's position." Detrex, however, maintains that this request is overly broad and irrelevant, and that the information sought is thus not discoverable. Detrex points out that while it is true that it has been involved in other CERCLA clean-ups, none of the clean-ups resulted from a delivery spill and none of them arose from a solvent spill on a customer's property. According to Detrex, the other incidents are substantially dissimilar from the plaintiffs' allegations in this case.

The court does not believe that the scope of discovery is as narrow as Detrex's argument would seem to imply, nor does it accept on faith Detrex's unverified and factually unsupported claim that the other incidents in which it has been involved are "substantially dissimilar" from the plaintiffs' allegations in this case. At the same time, however, it is apparent that Request No. 52, on its face, is overly broad in light of the subject matter of the plaintiffs' action. *See Mack v. Great Atlantic and Pacific T. Co., Inc.,* 871 F.2d 179, 187 (1st Cir.1989); *Segan v. Dreyfus Corporation,* 513 F.2d 695, 696 (2nd Cir.1975); *National Util. Serv., Inc. v. Northwestern Steel &*

*Wire Co.,* 426 F.2d 222, 226–27 (7th Cir. 1970); *Collins v. J.C. Nichols Co.,* No. 90–0389–CV–W–8, slip op. 1991 WL 186999 (W.D.Mo. Mar. 12, 1991) (1991 U.S.Dist. LEXIS 3285); *Heisley v. Barclays Business Credit, Inc.,* No. 89 C 7755, slip op., 1990 WL 141009 (N.D.Ill. Sept. 25, 1990) (1990 U.S.Dist. LEXIS 12664); *Roberts v. Lyons,* No. 88–0033, slip op., 1990 WL 11676 (E.D.Pa. Feb. 8, 1990) (1990 U.S.Dist. LEXIS 1503); *Syed v. Director, Federal Bureau of Investigation,* No. 90–1801, slip op. 1990 WL 259734 (E.D.Pa. Jan. 30, 1990) (1991 U.S.Dist. LEXIS 1163); *United States v. Chevron USA, Inc.,* No. 88–6681, slip op., 1989 WL 121616 (E.D.Pa. Oct. 16, 1989) (1989 U.S.Dist. LEXIS 12267); *Doe v. American Airlines,* No. 86 C 7801, slip op., 1988 WL 6911 (N.D.Ill. Jan. 20, 1988) (1988 U.S.Dist. LEXIS 588); *Havas v. Communications Workers of American,* 509 F.Supp. 144 (N.D.N.Y.1981); *In re Dayco Corp. Derivative Securities Litigation,* 102 F.R.D. 468, 471 (S.D.Oh.1984); *General Leasing Co. v. Lawrence Photo–Graphic Supply,* 84 F.R.D. 130, 131 (W.D.Mo.1979); *Barnett v. Sears, Roebuck and Co.,* 80 F.R.D. 662, 664 (W.D.Okla.1978). Conceivably, the request would require Detrex to produce "all writings relating to … any clean-ups, 'removal' actions … 'remedial action' … remedial investigation or feasibility study" involving Detrex, regardless of whether the circumstances surrounding such action would bear any similarity to the subject matter of this case. Moreover, the request is unlimited as to time frame, as well as the types of "writings" which are sought, and it falls far short of fulfilling the requirement of Rule 34(b) that each item or category of documents be described "with reasonable particularity." While there can be no doubt, as the plaintiffs insist, that their Request No. 52 may net some relevant information, the same could perhaps be said of a request for each and every document in Detrex's possession. The request in this instance represents not merely a "fishing expedition," but as one court described it, an effort to "drain the pond and collect the fish from the bottom." *In re IBM Peripheral EDP Devices Anti–*

*Trust Litigation,* 77 F.R.D. 39, 41–42 (N.D.Cal.1977).

The difficulties inherent in the overly broad scope of Request No. 52 are not overcome by the plaintiffs' offer to review the documents at their own expense. No party seeking information is entitled to roam an adversary's files, regardless of who bears the expense, in the absence of a proper discovery request. Nor does the court agree with the plaintiffs' claim that Detrex should at least be required to identify and list all of the documents covered by the request. A party resisting or objecting to a document request under a claim of privilege will usually be required to identify and list all documents which it seeks to withhold, because "[w]ithout identification of the documents the party against whom the privilege is claimed is completely unable to challenge the validity of that claim." *AM Intern., Inc. v. Eastman Kodak Co.,* 100 F.R.D. 255, 256–57 (N.D.Ill.1981). However, no such identification requirement applies where a party is objecting to a discovery request on grounds of relevancy or overbreadth, since the party seeking discovery is fully capable of challenging the validity of the objection on the basis of the discovery request itself, rather than by reference to the information or documents being withheld.

Consequently, the plaintiffs' motion to compel discovery with respect to their Document Request No. 52 is DENIED, without prejudice to the plaintiffs' right to submit additional, but more narrowly drawn, discovery requests in the future. Detrex's motion for protective order with respect to such request, as presently drawn, is GRANTED.

### Writings Relating to the System for Reporting Releases of Hazardous Substances

Lastly, the plaintiffs seek to compel production under their Document Request No. 58, which asks for

[a]ll writings constituting or relating to any formal system for reporting releases of hazardous substances, and all such

**122**

reports relating to EPC, Amcast or Gold Shield Solvents.

Detrex's response to this request stated as follows:

> To the extent there are documents relating to a formal reporting system for releases of hazardous substances, such documents will be produced.

> Detrex notes that there are no such reports relating to Elkhart Products Company or Amcast.

> Detrex objects to the production of reports concerning unrelated 'releases' by Gold Shield Solvents. Those reports do not relate in any way to Amcast or Elkhart Products Company. Consequently, those reports are irrelevant and are not reasonably calculated to lead to the discovery of admissible evidence. They will not be produced.

The present controversy over Request No. 58 is thus limited to the issue of whether Detrex should be compelled to produce documents or reports relating to releases of hazardous substances by Gold Shield Solvents. The plaintiffs assert that "Gold Shield Solvents ... was the entity that delivered the solvents at issue in this case," and Detrex does not dispute this claim. The court believes that the plaintiffs have made an adequate showing of relevancy, and Detrex has not met its burden of demonstrating otherwise.

The plaintiffs' motion to compel discovery with respect to their Document Request No. 58 is, therefore, GRANTED, and Detrex is ordered to produce all documents covered by the request within thirty (30) days of this date. Detrex's motion for protective order with respect to Document Request No. 58 is DENIED.

SO ORDERED.