Melonie H. SMITH, Randy Hipsher, and Michael Langley, Plaintiffs,

v.

The LOGANSPORT COMMUNITY SCHOOL CORPORATION and Ron Nolte, Individually and as agents for the Logansport Community School Corporation, Defendants.

No. S90–115 (AS).

United States District Court, N.D. Indiana, South Bend Division.

Dec. 3, 1991.

---

David T. Hasbrook, Indianapolis, Ind. and George E. Herendeen, South Bend, Ind., for plaintiffs.

Peter J. Agostino, South Bend, Ind., for Logansport Community School Corp.

Richard A. Cook, South Bend, Ind., for Ron Nolte.

## MEMORANDUM AND ORDER

ROBIN D. PIERCE, United States Magistrate Judge.

Plaintiffs Melonie H. Smith, Randy Hipsher, and Michael Langley brought this action under 42 U.S.C. § 1983 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, against their employer, the Logansport Community School Corporation ("LCSC") and their supervisor, Ron Nolte. Melonie Smith, who was employed by

LCSC as a custodian and bus driver, alleges that she was "subjected to a series of sexual innuendos, references to sex favors in exchange for favorable employment treatment, unconsented touching, and sexual harassment" by Nolte and others. Plaintiffs Hipsher and Langley allege that LCSC and Nolte retaliated and discriminated against them because of their opposition to the unlawful employment practices directed against Smith, and for their filing of a charge with the EEOC. Plaintiffs claim damages for the deprivation of favorable employment assignments and promotions, loss of reputation, and emotional distress. This case is now before the court on plaintiffs' motion for a protective order relieving them from any obligation to provide further deposition testimony, pursuant to Fed.R.Civ.P. 26(c) and 30(d), together with defendants' separate motions to compel discovery under Fed.R.Civ.P. 37(a). Plaintiffs have filed no response to either of the motions to compel. For the reasons which follow, plaintiffs' motion for a protective order will be denied, defendants' motions to compel will be granted, and certain of the costs and expenses incurred by defendants will be assessed against plaintiffs' counsel, in accordance with Fed. R.Civ.P. 37(a)(4).

*Plaintiffs' Motion for Protective Order*

The depositions of plaintiffs Hipsher and Langley were terminated and the deposition of plaintiff Melonie Smith was adjourned prior to its completion, at the insistence of plaintiffs' counsel, David T. Hasbrook. Plaintiffs assert that they are entitled to a protective order barring further deposition testimony, "[b]ecause each of the attorneys for the defendants in this case have demonstrated that they will rely on the discovery deposition for the purpose of harassing, annoying, embarrassing, oppressing or imposing undue burden or expense on the deponents or on the plaintiffs in this case...."

■ During the discovery process, Rule 26(c) of the Federal Rules of Civil Procedure provides general authority for the issuance of orders protecting a party or person "from annoyance, embarrassment, oppression, or undue burden or expense." However, once a deposition has been commenced, protection against abuse is afforded under the more specific provisions of Rule 30(d), which states:

At any time *during the taking of the deposition,* on motion of a party or of the deponent and *upon a showing that the examination is being conducted in bad faith or in such manner as unreasonably to annoy, embarrass or oppress the deponent or party,* the court in which the action is pending ... *may order the officer conducting the examination to cease forthwith from taking the deposition,* or may limit the scope and manner of the taking of the deposition as provided in Rule 26(c). If the order made terminates the examination, it shall be resume thereafter only upon the order of the court in which the action is pending. Upon demand of the objecting party or deponent, the taking of the deposition shall be suspended for the time necessary to make a motion for an order. The provisions of Rule 37(a)(4) apply to the award of expenses incurred in relation to the motion. (emphasis supplied).

While the issuance of an order terminating a deposition is a matter within the sound discretion of the court, "the power to halt or limit examination is sparingly used." 4A J. Moore, J. Lucas, *Moore's Federal Practice* ¶ 40.61 (2d ed. 1991). To obtain a protective order under Rule 30(d), "the moving party must show that the examination is being conducted in bad faith or in such manner as unreasonably to annoy, embarrass, or oppress the witness or party. Unless a sufficient showing of these grounds are made the motion will be denied." 8 C. Wright & A. Miller, *Federal Practice and Procedure* § 2116, at 428 (1970). Moreover, as one commentator has warned, an objecting party who demands the termination of a deposition "may subject himself to costs and reasonable expenses, which may be considerable where the taking of the deposition has ceased upon demand, if the court finds that his motion for a protective order has no sub-

stantial basis." 4A J. Moore, J. Lucas, *Moore's Federal Practice* ¶ 40.61 (2d ed. 1991).

### 1. Hipsher Deposition

■ The deposition of Randy Hipsher was commenced upon questioning by Mr. Peter J. Agostino, the attorney for LCSC, at 10:15 a.m. on July 12, 1990. After Mr. Agostino completed his direct examination, Mr. Hasbrook proceeded with cross. This was followed with redirect examination by Mr. Agostino. Mr. Agostino completed his redirect at 7:55 p.m., at which time the deposition was adjourned, with Mr. Richard A. Cook, the attorney for defendant Nolte, indicating that he was reserving his right to cross-examination, and Mr. Agostino indicating that he was reserving his "right to follow-up cross-examination [actually redirect] that may result by Mr. Hasbrook or Mr. Cook." (Hipsher dep. Tr. 327). Following subsequent scheduling changes, Mr. Hipsher's deposition was resumed at 1:13 p.m. on April 2, 1991, with cross-examination by Mr. Cook. When Mr. Cook completed his cross-examination at approximately 3:00 p.m., Mr. Agostino attempted to proceed with redirect. Mr. Hasbrook objected, stating: "I'm going to object to any further questioning by Mr. Agostino. He's already had his portion of direct examination. I have no cross-examination." (Hipsher dep. Tr. 411). When Mr. Agostino attempted to ask the deponent another question, the following exchange occurred:

MR. HASBROOK: At this point, it appears that Mr. Agostino would not voluntarily terminate the deposition.

I would move to terminate the deposition and instruct the witness not to answer any questions, and we would take signature.

MR. AGOSTINO: You're not going to let him answer any questions from what's been referenced by Mr. Cook? I have a right to ask questions on what's been referenced by Mr. Cook.

MR. HASBROOK: That's correct. There is no cross-examination. There is no redirect.

MR. COOK: He can redirect on what I've asked if it's a new topic.

MR. AGOSTINO: Do you understand the consequences of what's happening, Mr. Hipsher?

MR. HASBROOK: He's not going to answer any further questions. The deposition is over.

(Hipsher dep., Tr. 411–12).

Apparently convinced that his election to forego further examination of his client would somehow prevent redirect, Mr. Hasbrook refused to allow further questioning by Mr. Agostino and insisted that the deposition was "over." His assumption was ill-founded, and his unilateral termination of the deposition was improper.

Preliminarily, it should be noted that a discovery deposition is intended to provide an effective means of gathering non-privileged information "relevant to the subject matter involved in the pending action." Fed.R.Civ.P. 26(b). Although Rule 30(c) states that the "[e]xamination and cross-examination of witnesses may proceed as permitted at the trial under the Federal Rules of Evidence," this provision, when considered in light of the Rules of Evidence, has no practical effect upon the scope of cross-examination during a deposition,[1] see 4A J. Moore, J. Lucas, *Moore's*

---

[1] For example, if the party taking a deposition should limit direct examination to a particular issue, Fed.R.Evid. 611(b) would suggest that cross-examination be limited to the subject matter of that issue. But any cross-examining party could avoid such a limitation by simply noticing the deposition of the witness and proceeding with its own direct examination. Under Fed. R.Evid. 611(c), the examiner could still ask leading questions if the deponent is a hostile witness, an adverse party, or a witness identified with an adverse party. Clearly, it would make no sense to require such a formality, especially in light of the liberal objectives of discovery.

Accordingly, cross-examination of a deposition witness is not restricted to the scope of the direct. "[T]he only practical effect in discovery examinations of the restriction upon the scope of cross-examination is to prevent the use of leading questions when the interrogation is upon issues which were not the subject matter of the examination in chief, and the deponent is neither an unwilling nor a hostile witness nor an adverse party nor an officer, director, or managing agent of a public or private corporation or a partnership or an association which is an adverse party." 4A J. Moore, J. Lucas, *Moore's Federal Practice* ¶ 30.58 (2nd Ed.1991).

*Federal Practice* ¶ 30.58 (2nd Ed.1991), and "the examiner may ask about any thing relevant to the subject matter of the action, regardless of whether it was raised on direct examination." 8 C. Wright & A. Miller, *Federal Practice and Procedure* § 2113, at 420; *Spray Products, Inc. v. Strouse, Inc.*, 31 F.R.D. 211, 212 (E.D.Pa. 1962).

Rule 30(c) also provides little guidance regarding the order of examination of a deposition witness, inasmuch as the Federal Rules of Evidence do not prescribe any particular order of examination for a witness at trial. Instead, Fed.R.Evid. 611(a) merely commits the order of interrogating witnesses at trial to the discretion of the court. Traditionally, however, the order of examination of a trial witness proceeds in accordance with the well-recognized sequence of direct, cross, redirect and recross examination. *See* 6 Wigmore, *Evidence* § 1882 (Chadbourn Rev.1976). The same order of examination is customarily followed during a deposition. Thus, the party noticing the deposition will commence the interrogation with direct examination. Afterward, each other attending party may cross-examine. The party who called the witness will then have an opportunity to conduct redirect examination, and this may be followed with recross examination by each other attending party. Because the judge is usually unavailable to control the order of witness examination in a deposition, there is nothing to prevent counsel from modifying the usual sequence, either by express or tacit agreement. Whether counsel follow the usual order of witness interrogation or choose to modify the order, the principles which underlie modern discovery practice demand that each party represented at a deposition be afforded a full and fair opportunity for examination of the witness, subject only to the limitations provided by Rules 26(c) and 30(d).

In this case, Mr. Hasbrook's comment that Mr. Agostino "already had his portion of direct examination," and his assertion that "[t]here is no cross-examination," suggest a fundamental misconception concerning the roles of the three attorneys attending the deposition. Perhaps Mr. Hasbrook believed that Mr. Cook had shared direct examination with Mr. Agostino,[2] and that Mr. Hasbrook was the only attorney entitled to cross-examine the witness. If that was his assumption, he was mistaken. LCSC and Mr. Nolte are different parties with differing interests, and they are, accordingly, represented by separate counsel. Mr. Agostino noticed the deposition on behalf of LCSC and, having effectively called the witness, he was the only attorney charged with conducting direct examination. Mr. Cook and Mr. Hasbrook were both left to cross-examine, even though they were on different sides and the deponent was Mr. Hasbrook's client. In this regard, the situation would be no different if Mr. Agostino were to call Mr. Hipsher as his witness at trial.

When Mr. Agostino completed his direct examination during the first session on July 12, 1990, Mr. Hasbrook asked to proceed with cross-examination (Hipsher dep. Tr. 292). Upon the completion of cross-examination by Mr. Hasbrook, Mr. Agostino elected to proceed with a brief re-direct examination (Hipsher dep. Tr. 304), rather than await the completion of cross-examination by Mr. Cook. There was no objection to this procedure, which resulted in a permissible variation of the usual sequence of examination.[3] Mr. Cook commenced and completed his cross-examination at the next session on April 2, 1991. By the time Mr. Hasbrook indicated that he had "no cross-examination" and decreed that the deposition was "over," he had already cross-examined the deponent during the previous deposition session (Hipsher dep., Tr. 292),

2. When the deposition was previously adjourned on July 12, 1990, Mr. Hasbrook also indicated that he was reserving his right "to cross-examine on questions that would be propounded by Mr. Cook at a later date." (Hipsher Dep. Tr. 326–27).

3. This variation may have been due to the fact that the hour was growing late, combined with a belief by Mr. Agostino that he could complete a brief redirect examination prior to adjournment, thus leaving Mr. Cook to proceed with his cross-examination at the beginning of the next session.

and Mr. Cook had just finished his cross. At that juncture, it was not Mr. Hasbrook's turn to conduct re-cross, and Mr. Agostino clearly should have been permitted to follow-up Mr. Cook's cross with further redirect. In declaring that he had "no cross-examination," Mr. Hasbrook dispensed with nothing to which he was then entitled, and his pretext for stopping the deposition was, itself, erroneous. Indeed, from all that appears, he did not merely suspend the deposition pending application to the court for a termination order, as required under Rule 30(d), but instead "arrogate[d] to himself the right to terminate the examination in a unilateral fashion without consideration of the applicable legal authority." *See Hanlin v. Mitchelson*, 623 F.Supp. 452, 455 (S.D.N.Y.1985), *aff'd in part, rev'd on other grounds*, 794 F.2d 834 (2nd Cir.1986).

On July 13, 1990, the day after he terminated the deposition, Mr. Hasbrook sent Mr. Agostino the following letter:

I am writing to notify you of my objection to the manner and method of your deposition of the plaintiff, Randy Hipsher on July 12, 1990 in Logansport, Indiana. As you are aware, you had served notice on each of the plaintiffs and upon witness, Steve Smith, to appear for depositions at the law office of John Hillis on July 12, 1990. Your notices indicated that Mr. Hipsher's deposition would begin at 10:00 a.m. and be followed by Mike Langley's deposition at 1:00 p.m., followed by Melonie Smith's deposition at 3:00 p.m., followed by Steve Smith's deposition at 5:00 p.m. As you know, your direct examination portion of the deposition of Mr. Hipsher lasted from 10:15 a.m. until 7:15 p.m., less approximately 1 hour and 45 minutes for lunch and breaks.

I believe I have made you aware on the record during the deposition, after the deposition last night, and again this morning by telephone, that I objected to your repetitive questioning of Mr. Hipsher and your inquisition into areas that were clearly irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. I believe that your

deposition of Mr. Hipsher was conducted in bad faith and in such manner as unreasonably to annoy, embarrass and oppress both Mr. Hipsher and his co-plaintiff, Melonie Smith. Federal Rule of Civil Procedure 30(d) clearly prohibits such manner of deposition.

You obviously seek to conduct depositions of Melonie Smith, Mike Langley, and Steve Smith in the future. In the event you conduct those depositions in bad faith or in a manner unreasonably to annoy, embarrass or oppress either those deponents or any other party in the action, I will move to terminate the deposition consistent with the Federal Rules of Civil Procedure.

(Plaintiffs' motion, Exhibit A).

This after-the-fact attempt to reconcile the unilateral termination of the Hipsher deposition with the requirements of Rule 30(d) was disingenuous, at best. The various justifications put-forth in the letter bear no resemblance to the reason given by Mr. Hasbrook when he ended the deposition. Still, plaintiffs did not apply for a protective order under Rule 30(d) until June 24, 1991, some 11 months and 2 depositions later. If plaintiffs' counsel believed that the deposition was being conducted in bad faith, or that Mr. Hipsher was being unreasonably annoyed, embarrassed or harassed, he should have suspended the deposition at that juncture, stated his complaints on the record, and applied immediately to the court for protection under Rule 30(d). *See In Re Air Crash Disaster at Detroit Metropolitan Airport on August 16, 1987*, 130 F.R.D. 627 (E.D.Mich.1989); *Blair v. H.K. Porter Co., Inc.*, No. 85–4278, slip op., 1986 WL 9593 (E.D.Pa. Aug. 29, 1986) (LEXIS Genfed Library, Courts file); *Paparelli v. Prudential Ins. Co. of America*, 108 F.R.D. 727, 730–31 (D.Mass. 1985); *Shapiro v. Freeman*, 38 F.R.D. 308, 311–12 (S.D.N.Y.1965).

Ultimately, it is apparent that plaintiffs' motion for a protective order completely fails to justify the termination of the Hipsher deposition under the standards described in Rule 30(d). While there is no question that the deposition has already

consumed several hours and will likely require still more time to complete, the length of the deposition, alone, is not indicative of bad faith on the part of defense counsel, and it does not constitute a sufficient reason for terminating the deposition under Rule 30(d). Clearly, the length of the deposition must be considered in light of the nature of the action, the issues raised, and the deponent's involvement in the case. Here, Mr. Hipsher is pursuing his own action for employment discrimination against the defendants and, as his deposition indicates, he was also a witness to various statements and events relating to the alleged sexual harassment of his sister, Melonie Smith, by defendant Nolte. These factors portend a lengthy interrogation, especially so given the incident-oriented nature of the evidence relating to plaintiffs' claims. Although plaintiffs' motion indicates that Mr. Hasbrook "objected to both the length and the manner of questioning by LCSC's attorney," that he did so "[a]t various points during the questioning of the deponent," and that he also "specifically objected to the repetitive nature of the questioning of the plaintiff" (Plaintiffs' Motion, pp. 2–3), the court has reviewed each of the objections interposed by plaintiffs' counsel during Mr. Agostino's examination and finds that they were, in many instances, meritless. A review of the deposition transcript, moreover, does not reveal a pattern of irrelevant inquiry, or conduct by defense counsel calculated to unreasonably annoy, embarrass or oppress the deponent. In short, the court finds nothing to support or justify the termination of Mr. Hipsher's deposition under Rule 30(d).

### 2. Langley Deposition

■ The deposition of Michael Langley began on April 2, 1991 at 3:10 p.m., in Logansport, Indiana, and was adjourned without completion at 5:10 p.m. The deposition resumed on April 3 at 10:35 a.m. and proceeded until 2:30 p.m. At that point, plaintiffs' counsel objected to further questioning by Mr. Cook, the attorney for defendant Nolte, on the ground that the same questions had been "asked and answered," that the information sought was repetitive and cumulative, and that the deposition

was being conducted for the purpose of "badgering" the deponent.

Mr. Langley's deposition was terminated as Mr. Cook was questioning him about an incident he had witnessed in which Ron Nolte supposedly "walked into" Melonie Smith and backed her up to a truck. On a number of occasions, Mr. Hasbrook interposed objections on the ground that particular questions had been "asked and answered" during Mr. Agostino's examination on the previous day, and instructed the deponent not to answer. The deposition ended with the following:

Q Do you have a clear recollection of when you spoke to her, Mr. Langley?

MR. HASBROOK: Same objection.

At this point it appears that Mr. Cook is reluctant to move on to new material, if there is any.

For that reason, the deponent will move to terminate this deposition and we are finished.

We will take signature.

MR. COOK: I would ask that all the questions he has refused to answer be certified for the court.

MR. AGOSTINO: I want to make the record that Mr. Hasbrook has unreasonably interfered with the questioning by Mr. Cook, and we are going to request and do request that Mr. Hasbrook be responsible for costs and resuming this deposition in South Bend.

I also want to make the record that I have questions to ask of Mr. Langley on topics that arose from Mr. Cook's examination.

Are you going to allow me to ask those questions?

MR. COOK: I have a lot more questions to ask.

MR. HASBROOK: For the record, I would object to Mr. Agostino's asking any further questions unless I have cross-examination.

At this time the plaintiffs have no cross-examination; therefore, there is nothing upon which to ask redirect questions which are the only questions

that Mr. Agostino would be entitled to ask.

MR. COOK: If you are terminating the deposition, I certainly can't go forward any more with this.

So I would reserve the right to continue questioning upon order of the court and covering any further areas of inquiry.

MR. AGOSTINO: I also reserve the right to ask further questions, regardless of whether or not Mr. Hasbrook wants to ask questions.

I'm entitled to do so in follow-up to questions asked by Mr. Cook.

MR. COOK: My reply on behalf of Mr. Nolte is I, likewise, reserve the right to seek attorney's fees and costs for the termination of this deposition.

I would not be waiving those rights under Trial Rule 37.

I ask that the exhibits that have been identified thus far be made a part of the deposition and the items to be submitted to the court's jurisdiction.

MR. HASBROOK: Nothing further from the plaintiffs.

(Langley dep. pp. 246–48).

Although plaintiffs' motion asserts that Mr. Cook repeated a number of questions that had previously been "asked and answered," it does not identify or reference the specific questions from the prior examination which were purportedly duplicated. Nor does the motion demonstrate that the length of Mr. Langley's deposition, approximately six hours thus far, has been unreasonable in light of the nature of the issues and Mr. Langley's role in the incidents which form the basis of plaintiffs' claims. Ultimately, plaintiffs have failed to sustain their burden of demonstrating that the examination of Mr. Langley was "conducted in bad faith or in such manner as unreasonably to annoy, embarrass or oppress the deponent or party," as required under Rule 30(d).

### 3. Smith Deposition

Melonie Smith's deposition commenced on June 4, 1991 at 10:35 a.m., in South Bend, Indiana, and was adjourned without completion at 4:46 p.m. The deposition resumed on June 5 at 9:15 a.m., and proceeded until approximately 3:30 p.m., when Mr. Hasbrook indicated that it would have to be adjourned in order for him to attend a 6:00 p.m. appointment in Indianapolis (Smith dep., p. 429). The deposition, however, was not subsequently resumed, and on June 24, 1991 plaintiffs filed their motion for a protective order "prohibiting the defendants and their attorneys from conducting any further depositions of the plaintiffs."

Plaintiffs assert that Mr. Agostino scheduled the depositions of Melonie Smith and her husband Steven Smith in South Bend, in an effort to harass and impose additional expense upon plaintiffs. In addition, the plaintiffs maintain that "the attorneys for the defendants asked repetitive questions in a variety of matters that were calculated to unreasonably annoy and embarrass the deponent and which elicited nothing more than cumulative information rather than inquiries into unexplored or undiscovered areas." Plaintiffs further complain that "Mr. Cook ... behaved in a manner that was calculated to annoy, embarrass, and oppress the deponent;" that at one point he instructed Ms. Smith to review an 18–page document with attachments and then objected to Mr. Hasbrook's suggestion that the parties take a lunch break in order to allow Smith an opportunity to read the document; that he "repeatedly interrupted the deponent before she had completed an answer to a question;" that he objected to a request by Ms. Smith for a break to allow her to use the restroom, on the ground that it would interrupt his inquiry on a particular subject; and that he also refused to go off the record on June 5 at approximately 3:35 p.m. "to discuss any potential resolution of the scheduling problems created by the repeated delays by each of the attorneys for the defendants throughout the course of the depositions in this matter." (Plaintiffs' Motion for Protective Order, pp. 6–8).

Again, the court finds that plaintiffs' showing is insufficient to justify the issuance of a protective order under Rule 30(d). First, plaintiffs filed their action in

this court, which is located in South Bend, and defendants would have been entitled to schedule all of plaintiffs' depositions in South Bend. The fact that Mr. Agostino chose to schedule the Smiths' depositions in South Bend is in no way indicative of bad faith. Moreover, if plaintiffs' believed that the location of the depositions was improper or burdensome, they could easily have sought a protective order under Rule 26(c) upon receiving the deposition notices. Second, the Smith deposition transcript indicates that Mr. Hasbrook adjourned the deposition so that he would be able to reach Indianapolis in time for a 6:00 p.m. appointment (Smith dep., Tr. 429), not because he believed, as he now maintains, that it was being conducted in bad faith or in such manner as to unreasonably annoy, embarrass or oppress the deponent. Those grounds were not asserted until plaintiffs filed their motion for a protective order on June 24. Third, the motion fails to identify any questions which were supposedly repeated by Mr. Cook, nor does it reference or cite examples of any instances in which Mr. Cook interrupted the deponent before she had completed her answer to a question. From a review of the deposition transcript, the court has found nothing to substantiate those claims. Fourth, it turns out that the 18–page document with attachments to which plaintiffs refer was actually a previous sworn statement prepared by Ms. Smith, and that the attachments were included in the document when she prepared it (Smith dep., Tr. 327; 329–31). Mr. Cook objected to Mr. Hasbrook's suggestion of a "lunch break" to review the document because he believed, with some justification, that Mr. Hasbrook intended to use the time to coach Ms. Smith about the document. In any event, Mr. Cook's objections apparently had little effect, since Mr. Hasbrook and Ms. Smith left the deposition anyway (Smith dep, Tr. 336). Fifth, a refusal to engage in a conference "off the record" does not demonstrate bad faith on the part of Mr. Cook and it does not establish that the "*examination* [was] being conducted in bad faith or in such manner as unreasonably to annoy, embarrass or oppress *the deponent or party*" under Rule

30(d). Finally, with regard to plaintiffs' assertion that Mr. Cook "objected" to Ms. Smith's request for a restroom break, the record reveals no such objection. Instead, it shows that Mr. Cook merely asked four more questions (two of which were objected to by Mr. Hasbrook) before honoring the request. (Smith dep., Tr. 398–400). Plaintiffs' reasons for terminating the Smith deposition are baseless.

In passing, the court must note that it would not be appropriate for counsel examining a deponent to repeatedly and deliberately duplicate questions previously asked by other counsel. Such a practice, although not shown to have occurred in this instance, could support a motion to terminate a deposition under Rule 30(d), if employed to such an extent that bad faith or a motive to harass the deponent could properly be inferred. At the same time, however, an oral deposition is not merely a device to uncover and develop information. It also provides a legitimate and efficient means of testing a witness' knowledge, recollection and veracity. To these ends, counsel should be free to follow-up and explore the same subject matter covered during a previous examination, especially where the deponent's earlier responses were evasive, equivocal, or inconsistent with other testimony or evidence. It should also be remembered that Rule 30(d) affords protection only when "the examination is being conducted in bad faith or in such manner as *unreasonably* to annoy, embarrass or oppress the deponent or party." This is, perhaps, an implicit recognition that few depositions, particularly those where the deponent is a party, are not to some extent annoying, embarrassing or oppressive, at least in the subjective estimation of the individual being examined. The Rule is not designed to stop an uncomfortable but relevant interrogation or to forestall the elicitation of testimony damaging to a party's case.

### Defendant Nolte's Motion to Compel

Defendant Nolte seeks an order compelling the resumption of the Langley and Smith depositions; directing plaintiffs to

serve proper responses to certain of his requests, and to identify those documents covered by his requests which are being withheld on grounds of relevancy or privilege; and compelling plaintiff Smith to provide authorizations for the release of her medical and psychological treatment records.

### 1. Langley and Smith Depositions

Mr. Nolte argues that the depositions of plaintiffs Langley and Smith were wrongfully terminated, and that plaintiffs' counsel acted improperly in instructing the deponents not to answer various questions propounded by Mr. Cook, on the ground that the questions were repetitive or had been "asked and answered." Mr. Nolte seeks an order compelling the resumption of the Langley and Smith depositions and directing the deponents to answer the questions to which such objections were raised.

■■■ The action of plaintiffs' counsel in directing Langley and Smith not to answer certain questions on the ground that they were repetitive was clearly inappropriate. Rule 30(c) provides that "[e]vidence objected to shall be taken subject to objections." Except where a question calls for privileged information, it is considered improper for counsel at a deposition to instruct the deponent not to answer. *Ralston Purina Co. v. McFarland,* 550 F.2d 967, 973 (4th Cir.1977); *The Great Southern Company v. Kleinman,* No. 87 C 5822, slip op., 1991 WL 86060 (N.D.Ill. May 8, 1991) (1991 U.S.Dist. LEXIS 6559); *National Microsales v. Chase Manhattan Bank,* 761 F.Supp. 304, 307 (S.D.N.Y.1991); *James v. Miller,* No. 86 C 10081, slip op., 1988 WL 72290 (N.D.Ill. June 29, 1988) (1988 U.S.Dist. LEXIS 6793); *Hanlin,* 623 F.Supp. at 455; *American Hangar, Inc. v. Basic Line, Inc.,* 105 F.R.D. 173, 177 (D.Mass.1985); *Coates v. Johnson and Johnson,* 85 F.R.D. 731, 733 (N.D.Ill.1980); *Lloyd v. Cessna Aircraft Co.,* 74 F.R.D. 518, 519–20 (E.D.Tenn.1977); *Shapiro,* 38 F.R.D. at 311–12. More particularly, "the fact that a question is repetitive is not an appropriate ground for instructing a witness not to answer a question, since it does not involve a matter of privilege." *Gall v.*

*St. Elizabeth Medical Center,* 130 F.R.D. 85, 87 (S.D.Ohio 1990). "The proper procedure to follow when an objection is raised to a question propounded in a deposition is for the attorney who raises the objection to note his objection but to allow the question to be answered." *Hanlin,* 623 F.Supp. at 455; 8 C. Wright & A. Miller, *Federal Practice and Procedure* § 2113, at 419 n. 22 (1970).

During the Langley deposition, the deponent was instructed not to answer on 14 occasions, based on objections by Mr. Hasbrook that a question was repetitious (Langley dep., Tr. 213; 223; 234; 236; 239; 241–44). This occurred 12 times during the deposition of Melonie Smith (Smith dep., Tr. 128; 276; 281; 317–18; 397; 400; 403; 407–08; 427). In each instance, the direction not to answer was not based on any claim of privilege and was without justification. Consequently, the court will order that the Langley and Smith depositions be resumed and that they answer all questions for which such an objection was asserted.

### 2. Document Requests

■■■ On June 15, 1990, defendant Nolte served a request for production of documents upon plaintiffs. Item C of the request called for

> [a]ny and all medical and/or psychiatric records pertaining to but not limited to office visits, nurses' notes, physician statements, opinions, diagnosis, or other items concerning or relating to any of the incidents alleged in the plaintiffs' complaint or the mental condition of the plaintiff, Melonie Smith.

Subsequently, on or about July 10, 1990, plaintiffs served Mr. Nolte with a written response indicating that they would

> produce any and all medical and/or psychiatric records pertaining or relating to the incidents alleged in Plaintiffs' Complaint or the mental condition of the Plaintiff, Melonie Smith, to the extent that Plaintiffs may have possession of such documents and/or records and to the extent that such documents and/or records are relevant to the matters at issue in this litigation and that they are

reasonably calculated to lead to the discovery of admissible evidence.

Mr. Nolte acknowledges that Ms. Smith did produce some documents on September 14, 1990, but he contends that her response to Item C was inadequate and that she should be required to identify any documents being withheld on the ground of relevancy. The court must agree that the response is insufficient, but finds that under a proper response no documents should have been withheld, thus rendering an identification requirement unnecessary.

Ms. Smith did not object to Mr. Nolte's request for medical and psychiatric records, but instead qualified her answer by reserving to herself the determination of whether any such records in her possession would be relevant and thus subject to discovery. This response was improper. If plaintiff believed that the request was not reasonably calculated to lead to the discovery of admissible evidence, or was overbroad, she should have objected or sought a protective order. But having asserted no objection, she must produce all materials in her possession called for by the request. There is no middle ground entitling her to produce some documents and withhold others, depending on her *ex parte* determination of relevancy.

■ Item E of Mr. Nolte's document request sought

> [c]opies and/or prints of any and all films, letters, tape recordings, video tapes, photographs, or other demonstrative evidence pertaining to the incidents alleged in the plaintiffs' complaint.

In their response, plaintiffs indicated that they did not possess any tape recordings made by defendant Nolte, and that they did not "possess any other items ... responsive to this request," but would "make available for inspection any and all photographs in their possession." Plaintiffs' response, however, also included the following objection:

> Plaintiffs object to the production of any and all 'tape recordings' in their possession because such material was obtained and prepared in anticipation of litigation or after litigation had begun in

this matter and is therefore privileged attorney work product and/or material prepared in anticipation of trial and for which this Defendant has failed to show that he has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means....

Mr. Nolte again maintains that this response is insufficient, because plaintiffs have not identified any items withheld pursuant to a claim of privilege or the attorney work product doctrine. The court is in full agreement. In claiming that documents or other materials covered by a production request are privileged or protected from disclosure under the attorney work product doctrine, the responding party must specifically identify the documents or materials being withheld. *See Conoco, Inc. v. United States Dept. of Justice,* 687 F.2d 724, 730 (3rd Cir.1982); *Amcast Indus. Corp. v. Detrex Corp.,* 138 F.R.D. 115, 121 (N.D.Ind.1991); *Willemijn Houdstermaatschaapij BV v. Apollo Computer,* 707 F.Supp. 1429, 1439–40 (D.Del.1989); *Hydramar, Inc. v. General Dynamics Corp.,* 115 F.R.D. 147, 149 (E.D.Pa.1986). As the court pointed out in *AM Intern., Inc. v. Eastman Kodak Co.,* 100 F.R.D. 255, 256 (N.D.Ill.1981), "the law is clear that relevant documents for which a privilege is claimed must be identified.... Without identification of the documents, the party against whom the privilege is claimed is completely unable to challenge the validity of that claim. The outcome is indefensible." Similarly, the court in *Petz v. Ethan Allen, Inc.,* 113 F.R.D. 494, 497 (D.Conn. 1985) specifically noted that a party claiming protection under the work product doctrine must "identify the withheld documents with sufficient particularity that the opposing counsel can intelligently argue that the privilege ought not to apply."

In this case, Ms. Smith will be directed to provide a written statement identifying all materials covered by Item E of defendant Nolte's production request, which are being withheld under the work product doctrine. With respect to each document or item

withheld, plaintiff must indicate 1) a general description of the type or nature of the document; 2) a brief description of the document's subject matter; 3) the nature of privilege asserted; 4) the date on which the document was prepared; 5) the name of each person who participated in the preparation of the document; 6) the number of pages or, if the document is a recording, its length in terms of time; and 7) the name(s) of the addressee(s), if applicable.

### 3. Consents for Release of Medical Records

██ Defendant Nolte's counsel, Mr. Cook, indicates that he initially attempted to obtain Ms. Smith's psychological counseling records by arranging for records depositions and issuing subpoenas duces tecum to two counseling providers. According to Mr. Cook, one provider, Trinity House in Kokomo, Indiana, subsequently refused to release Ms. Smith's records without a court order or an authorization executed by Ms. Smith, and the other provider, Mr. Jerry Wise, a mental health counselor, declined to produce his personal shorthand notes of a counseling session with Ms. Smith which occurred on June 26, 1990. After his efforts to secure the records through subpoenas and records depositions proved unsuccessful, Mr. Cook sent a letter to plaintiff's counsel on November 19, 1990, asking that Ms. Smith provide a written consent authorizing the release of her records. According to Mr. Cook, Ms. Smith has thus far refused to furnish such an authorization in spite of several subsequent requests.

There is no question that by asserting a claim for emotional distress Ms. Smith has placed her mental and emotional condition in issue and that the defendants are entitled to records concerning any counseling she may have received. *See Tramm v. Porter Memorial Hosp.*, 128 F.R.D. 666, 667–68 (N.D.Ind.1989); *Doe v. Special Investigations Agency, Inc.*, No. 90–1762, slip op., 1991 WL 171401 (E.D.Pa. Aug. 29, 1991) (1991 U.S.Dist. LEXIS 12079) ("the psychiatric and psychological records of the plaintiffs are certainly relevant to plaintiffs' claim for emotional distress"). In this case, as in others where the mental or physical condition of a party has been placed in issue, the practice of obtaining written consents for the release of records represents the least expensive and most efficient means of procuring information from medical or counseling providers. Court orders directing providers to produce their records often prove unsatisfactory since they require the party seeking production to apply to the court each time the identity of an individual provider is discovered. Subpoenas duces tecum, which must be accompanied by witness fees and records deposition notices, can prove costly and may result in additional delay. And orders directing the parties themselves to procure and produce their records give no assurance that all pertinent documents will be provided. The court will, accordingly, issue an order directing Ms. Smith to produce executed consents authorizing the release of her counseling records to Mr. Nolte's attorney. *See Brown v. Eli Lilly and Co.*, 131 F.R.D. 176, 178 (D.Neb.1988); *Fleming v. Gardner*, 84 F.R.D. 217 (E.D.Tenn.1978).

### Defendant LCSC's Motion to Compel

LCSC seeks an order compelling plaintiffs Hipsher and Langley to provide "non-evasive" answers to LCSC's interrogatories, directing all three plaintiffs to produce documents called for in the subpoenas duces tecum which accompanied their deposition notices, and compelling each plaintiff to provide consents for the release of his or her medical and counseling records.

### 1. Interrogatories

██ On March 1, 1991, LCSC served plaintiffs Hipsher and Langley each with a set of seven interrogatories, asking them to provide information supporting or relating to their various claims, including: the identities of any persons providing treatment for mental distress, any physical ailment, or any other condition for which compensation was being sought; the factual basis for their First Amendment claims; the facts supporting their contention that the alleged sexual harassment of Melonie Smith was pursuant to an official policy or

custom of LCSC; and the factual basis for the proposition that they were treated differently from other LCSC employees with respect to their overtime compensation. On June 18, 1991, plaintiffs Hipsher and Langley served their answers to LCSC's interrogatories. To each question, plaintiffs' responded by generally referring LCSC to their deposition testimony, as well as "the depositions of all witnesses taken in this case and all Discovery responses filed in this matter."

Plaintiffs' answers to LCSC's interrogatories are evasive and clearly insufficient. It is well-established that an answer to an interrogatory "must be responsive to the question. It should be complete in itself and should not refer to the pleadings, or to depositions or other documents, or to other interrogatories, at least where such references make it impossible to determine whether an adequate answer has been given without an elaborate comparison of answers." 4A J. Moore, J. Lucas, *Moore's Federal Practice* ¶ 33.25[1] (2d ed. 1991); *See United States v. Harless*, CV No. 591–127, slip op. (S.D.Ga. Oct. 16, 1991) (1991 U.S.Dist. LEXIS 16534); *Continental Illinois Nat. Bank & Trust v. Caton*, 136 F.R.D. 682, 686 (D.Kan.1991) ("Incorporation by reference to a deposition is not a responsive answer."); *Johnson v. National Railroad Passenger Corp.*, No. 87–1322, slip op., 1987 WL 16311 (E.D.Pa. Aug. 28, 1987) (1987 U.S.Dist. LEXIS 7875) (interrogatory answers stating "please refer to plaintiff's deposition," or making general reference to another interrogatory answer, described as "non-responses"); *Hoffman v. United Telecommunications, Inc.*, 117 F.R.D. 436, 440 (D.Kan.1987); *NEC America, Inc. v. The United States*, 636 F.Supp. 476, 479 (CIT 1986); *American Rockwool v. Owens–Corning Fiberglas Corp.*, 109 F.R.D. 263, 266 (E.D.N.C.1985) ("Directing the opposing party to an undifferentiated mass of records is not a suitable response to a legitimate request for discovery."); *International Mining Co. v. Allen & Co.*, 567 F.Supp. 777, 787 (S.D.N.Y.1983); *Martin v. Easton Publishing Co.*, 85 F.R.D. 312, 315 (E.D.Pa.1980) (incorporation by reference to a deposition not a responsive answer). Defendant LCSC is entitled to discover the factual basis for plaintiffs' claims through the use of interrogatories, without being referred to the plaintiffs' deposition testimony, other discovery materials, or the pleadings.

### 2. Subpoenas Duces Tecum

On August 18, 1990, LCSC served plaintiffs, through their counsel, with subpoenas duces tecum, requiring each of them to bring the following documents and objects to their depositions which were then scheduled for September 4 and 5, 1990:

1. All notes, calendars, books, diaries, memorandums, and writings of any kind whatsoever, prepared by plaintiff near or at the time of the events written about which relate in any way to any aspect of the lawsuit in question, other than attorney/client communications.

2. Any tape recordings of any employee or the school corporation whose statements the plaintiffs contend are statements of the school corporation.

3. The tape recordings or transcript of tape recordings of any conversations with Dennis Richey and Gene Williams, Assistant Principal of Logansport Community High School.

4. All documents and materials submitted to the Equal Employment Opportunity Commission (EEOC) with respect to the subject matter of this lawsuit or the EEOC claim.

5. Any medical bills documenting medical expenses claimed as damages.

6. Any documentation of expenses claimed as damages other than medical bills.

7. Notes relating to conversations between plaintiff and school corporation employees, including Dennis Richey, Steven Kain, Ron Nolte and Gene Williams.

8. Any calendar book containing notes of any events related to the subject matter of the lawsuit.

9. Summaries of conversations other than as described above.

(LCSC's Motion to Compel, Exhibit C).

LCSC asserts, without contradiction, that plaintiffs have never raised any objection

to the subpoenas, but have thus far refused to produce the documents and objects requested. The procedure followed by LCSC in serving plaintiffs with subpoenas duces tecum, directing them to produce documents and objects at the time of their depositions, is authorized by Rule 45(d)(1) of the Federal Rules of Civil Procedure. Plaintiffs have presented the court with nothing to justify their non-compliance with the subpoenas, and the court will order them to produce all of the materials listed.

### 3. Consents for Release of Medical Records

Like defendant Nolte, LCSC also seeks an order compelling the production of signed consents providing for the release of medical and counseling records, but LCSC's motion asks that the consents be produced by all three plaintiffs. Counsel for LCSC indicates that he gave plaintiffs' attorney requests for the release of medical information relating to their claims on July 12, 1990, and that in a series of subsequent telephone conversations and personal meetings he asked plaintiffs' counsel when the information would be provided, but received only a non-committal response. LCSC's attorney further states that he wrote to plaintiffs' counsel on March 5, 1991, again requesting the releases, but received no response. For the reasons noted previously, plaintiffs will be directed to produce executed consent forms authorizing the release of their medical or counseling records to LCSC's attorney.

### Sanctions

Rule 37(a)(4) requires a court to award reasonable expenses, including attorneys fees, to the party prevailing on a discovery motion, unless the conduct of the losing party is found to have been "substantially justified" or if "other circumstances make an award of expenses unjust." In this case, the court finds that plaintiffs' motion for a protective order was not substantially justified and that no other circumstances exist which would make an award of expenses in favor of defendants unjust. In addition, plaintiffs have submitted nothing in opposition to defendants' motions to compel. There is thus no basis on which the court could find plaintiffs' actions to have been "substantially justified" with respect to the matters raised in the motions to compel. Moreover, the court is convinced that responsibility for the discovery abuses which have occurred in this case rests solely upon plaintiffs' lead counsel, Mr. David T. Hasbrook, and not upon the individual plaintiffs or their local counsel. Accordingly, Mr. Hasbrook will be ordered to pay the reasonable expenses, including attorneys fees, incurred by defendants in opposing plaintiffs' motion for a protective order and presenting their motions to compel discovery. The court declines to award expenses or attorneys fees in connection with the resumption and completion of plaintiffs' depositions. *See American Hangar Inc.*, 105 F.R.D. at 176. Defendants are directed to submit affidavits itemizing and supporting their fee and expense claims within thirty (30) days of this date.

### Order

For the foregoing reasons, plaintiffs' motion for a protective order is DENIED, and defendants' motions to compel discovery are GRANTED. It is further ORDERED as follows:

1. The depositions of plaintiffs Langley and Smith shall be resumed under the direct supervision of the court in Room 231 of the Federal Building in South Bend, Indiana, at times and dates to be established during a telephone conference between the court and counsel on December 16, 1991 at 9:30 a.m.. The court will initiate the conference call. Defendants shall be responsible for retaining a private certified court reporter for the depositions.

2. The deposition of plaintiff Hipsher may be resumed, at the option of defendants, upon notice issued within twenty (20) days of this date.

3. Plaintiffs shall produce all documents and materials requested in Item C of defendant Nolte's request for production, and shall provide proper identification of all documents or materials covered by

Item E of his request, within twenty (20) days of this date.

4. Defendants shall immediately provide plaintiffs' counsel with appropriate consent forms authorizing the release of medical and counseling records. Plaintiffs Smith, Langley and Hipsher shall execute and return the consent forms to counsel for LCSC, and plaintiff Smith shall return her consent forms to counsel for defendant Nolte, within twenty (20) days of this date. Copies of all documents and records obtained through use of such consents shall be provided to plaintiffs' counsel as the records are received.

5. Plaintiffs Langley and Hipsher shall serve full and complete answers to LCSC's interrogatories upon counsel for LCSC within twenty (20) days of this date.

6. Plaintiffs shall produce all documents and objects described in the subpoenas duces tecum to counsel for LCSC, within twenty (20) days of this date.

SO ORDERED.