Elsie B. WOLHAR and Robert
Wolhar, Plaintiffs,

v.

**GENERAL MOTORS CORPORATION, a
Delaware corporation, and Frank W.
Diver, Inc., a Delaware corporation, t/a
Diver Chevrolet, Defendants.**

No. 93C–04–024 SCD.

Superior Court of Delaware.

Submitted: July 14, 1997.
Decided: Oct. 2, 1997.

Lisa C. McLaughlin, Robert S. Goldman, Phillips, Goldman & Spence, P.A., Wilmington, for plaintiffs, Elsie B. and Robert Wolhar.

Somers S. Price, Jr., Potter, Anderson & Corroon, Wilmington, for defendant, General Motors Corporation.

## MEMORANDUM OPINION

DEL PESCO, Judge.

The issues before the Court come from several orders decided by the Special

Discovery Master, James F. Kipp, Esquire (the "SDM").[1] GM takes exception in its motion to the SDM's findings of facts and decision that it waived its right to the attorney-client privilege. In their motion, the Wolhars take exception to the SDM's findings that GM waived its attorney-client privilege but did not waive its work product privilege despite the fact that a privilege log was untimely made. The standard of review upon the filing of exceptions to a ruling of the SDM is *de novo*.[2] This is the Court's decision on these motions.

## NATURE AND STAGE OF PROCEEDINGS

This product liability action arises out of an automobile accident that occurred on April 9, 1991. Plaintiff Elsie B. Wolhar ("Mrs.Wolhar") was driving a vehicle manufactured by defendant General Motors Corporation ("GM"), when she struck another vehicle from the rear. Mrs. Wolhar alleges that the accident was caused by a defect in the braking system in her 1987 Chevrolet S–10 Blazer. Mrs. Wolhar further claims that she suffered enhanced injuries as a result of an alleged defect in the design of the seat back in her Chevrolet Blazer which she claims collapsed backwards after impact with the other vehicle.

This case was scheduled for trial on October 15, 1996. But on October 14, 1996, the Wolhars presented the Court with a motion for continuance based on their independent discovery of documents which, they believe, were responsive to their discovery requests and court orders. The Court granted the Wolhars' motion and ordered GM to produce a privilege log by November 1, 1996. GM claimed the documents were privileged and moved for a protective order. The matter was then referred to the SDM who entered his opinion on February 13, 1997. The Wolhars and GM filed various reconsideration

---

1. *Wolhar v. General Motors Corp.*, Del.Super., C.A. No. 93C–04–024, Kipp, SDM (Feb. 13, 1997) (Mar. 26, 1997) (Apr. 14, 1997) (ORDERS).

2. *Wolhar v. General Motors Corp.*, Del.Super., C.A. No. 93C–04–024, Del Pesco, J. (June 17,

1996) (Order of Reference at ¶ 7); *see also Playtex FP, Inc. v. Columbia Cas. Co.*, Del.Super., 609 A.2d 1083, 1085–87 (1991) (standard of review for findings of special discovery master is *de novo*).

motions that were addressed by the SDM on March 26, 1996 and April 14, 1997.

## SUMMARY OF THE SDM'S ORDERS

The SDM's Order of February 13, 1997 focused on a collection of papers known as the *Hibbard*[3] documents. These documents are described by the Wolhars as "meeting minutes (and attachments), testing and analysis of seat back strength in GM vehicles." GM does not claim privilege over all of the *Hibbard* documents, but does claim privilege for those documents termed the "Litigation Study," approximately 3,300 pages of material.

The SDM found that GM waived its right to attorney-client privilege when it failed to identify the Litigation Study documents as privileged attorney-client communications in response to interrogatories served by the Wolhars. Additionally, the SDM noted that despite the sanctions imposed in the Opinion and Order by Commissioner Reynolds,[4] GM "allowed limited or no access to those documents which it determined to be privileged, and even failed to produce the necessary privilege log to identify those documents and the basis for the privilege asserted. It is only now, following discovery by the Wolhars of the *Hibbard* documents, that GM produces a privilege log."[5]

As to the privilege of attorney work product, the SDM found that although GM carried the initial burden of proving the existence of the work product privilege[6] by showing that the documents were prepared in anticipation of litigation, the Wolhars failed to prove substantial need of the materials and that they were unable without undue hardship to obtain the substantial equivalent of the documents by other means.[7] In subsequent orders addressing the Wolhars and GM's motions for reconsideration, the SDM further noted the distinctions between the attorney-client and work product privileges. He also indicated that Delaware has not adopted Federal Rule of Civil Procedure 26(b)(5) which specifically addresses the issue of timely filing of privilege logs.[8]

## GM'S EXCEPTIONS TO THE SDM'S ORDERS

GM takes exception to the SDM's findings in his February 13, 1997 Order that the Wolhars' interrogatories 24, 28, 31 and 32 "fairly encompass the documents in question [the Litigation Study documents on the GM privilege log] which appear to be related generally to seating systems in GM vehicles."[9] GM contends that these interrogatories were limited only to documents specifically related to 1983 through 1991 Chevrolet Blazers.[10] As noted by affidavit, the documents of the Litigation Study involved analysis of seats in a generic fashion or accidents involving a wide range of vehicles and seating systems. GM also takes exception to the SDM's finding that GM should have submitted a privilege log for a limited group of

---

3. These papers are litigation study documents from a California-based front seat failure lawsuit against General Motors. *Hibbard v. General Motors*, Cal.Super., C.A. No. 4925319, Creede, J. (Jan. 10, 1996).

4. *Wolhar v. General Motors*, Del.Super., C.A. No. 93C-04-024, Reynolds, Comm'r (Apr. 8, 1996) (ORDER).

5. *Wolhar v. General Motors Corp.*, Del.Super., C.A. No. 93C-04-024, Kipp, SDM (Feb. 13, 1997) (ORDER at 10-11).

6. *See Reese v. Klair*, Del.Ch., C.A. No. 7485, Hartnett, V.C., 1985 WL 21127 (Feb. 20, 1985).

7. *Wolhar*, Kipp, SDM (Feb. 13, 1997) at 17; *See* Super.Ct.Civ.R. 26(b)(3).

8. Federal Rule 26(b)(5) states in pertinent part:

When a party withholds information otherwise discoverable ... by claiming that it is privileged or subject to protection as trial preparation material, the party shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable the other parties to assess the applicability of the privilege or protection.

9. *Wolhar*, Kipp, SDM (Feb. 13, 1997) at 9.

10. On May 26, 1995, the Court, in response to a motion to compel by the Wolhars, entered an order that required GM to produce documents "involving the 1983 through 1991 Chevrolet Blazers." *Wolhar v. General Motors Corp.*, Del.Super., C.A. No. 93C-04-024, Del Pesco, J. (May 26, 1995) (ORDER).

minutes on the GM computer information management system. GM explains that it marked all such entries as "redacted" and the Wolhars' expert was aware from prior searches of the system that this was a designation of privilege.

■ With regard to the interrogatories, the Court finds that SDM's decision on these issues was appropriate. As noted by the SDM and conceded by GM, the Task Force studied various seat-related subjects including the relationship between restraint systems and seating systems and the performance of seating systems in rear impacts. The information in these documents encompass GM seats generically, not just to a specific vehicle. It was reasonable for the SDM to conclude that such documents "fairly encompass" the interrogatories as modified by the Court and could as easily pertain to 1983 through 1991 Chevrolet Blazers as to any other vehicle manufactured by GM.

■ The SDM's finding that GM waived the attorney-client privilege by placing the documents "at issue" is also compelling. As noted by Commissioner Reynolds in his April 1996 Opinion and Order, GM stated that no additional tests for the 1987 Blazer were performed and that, in fact, the only relevant test was FMVSS207 [11] with no supporting tests. The thrust of the Wolhars' claim against GM is that GM's seat backs were inadequate. GM responds that its testing on the 1987 Blazer was adequate and conformed with the state of the art.

The SDM found that one particular *Hibbard* document states in relevant part:

Compliance with FMVSS207 is insufficient due to lack of relationship to dynamic real world performance. Regulatory basis for 207 performance is lacking. It reflects the state-of-the-art in the late 1960's. There is an absence of dynamic in-house performance standard. GM has little understanding of the trade-off between yielding and rigidity. GM's yielding philosophy implies and understanding of the trade-offs and relationship to occupant safety and injury mechanism. All of our seats yield significantly in a 39 mph rear barrier test. Seat designers are unaware of seat performance in dynamic tests." (Hibbard Bates 2008–2210).[12]

■ The Court adopts the SDM's finding that "[i]n light of GM's repeated representations that the only quality control testing performed on the Blazer seats was FMVSS207, GM has placed at issue the very litigation study that it seeks to shield from disclosure by assertion of attorney-client privilege." [13] Waiver of attorney-client privilege rests on the rationale of fairness.[14] The Court cannot permit GM to make bare, factual allegations that are central to the dispute between the parties and then permit GM to assert the attorney-client privilege as a barrier to the better understanding of the factual situation.[15] Therefore, the Court denies GM's exceptions to the SDM's Orders and finds that GM waived its right to attorney-client privilege by placing the Litigation Study at issue.

### THE WOLHARS' EXCEPTIONS TO THE SDM'S ORDERS.

The Wolhars argue that GM failed to properly assert a claim of work product privilege. The work product privilege is presented in Superior Court Civil Rule 26(b)(3), which states, in pertinent part:

A party may obtain discovery of documents and tangible things ... prepared in anticipation of litigation or for a trial by or for another party ... only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the material by other means.[16]

---

11.  Federal Motor Vehicle Safety Standard 207.

12.  *Wolhar*, Kipp, SDM (Feb. 13, 1997) at 15.

13.  *Id.*

14.  *Tackett v. State Farm Fire & Casualty Ins. Co.*, Del.Supr., 653 A.2d 254, 259 (1995).

15.  *Id.*

16.  Super.Ct.Civ.R. 26(b)(3).

The Wolhars contend that the entries made by GM in the November 1, 1996 privilege log were inadequate and provided factual information insufficient to permit the Wolhars to evaluate the claim or for the Court to determine its validity. Additionally, they allege that the privilege was untimely asserted.

The Wolhars' analysis relies upon Rule 33(b)(4), which requires that "all grounds for an objection to an interrogatory shall be stated with specificity. Any ground not stated in a timely objection is waived unless the party's failure to object is excused by the Court for good cause shown."[17] The Wolhars argue that the protection afforded in Rule 26 does not apply without the answering party first raising a privilege objection pursuant to Rule 33(b)(4). The Wolhars cite Wright and Miller's *Federal Practice and Procedure* to support this contention:

> Failure to object within the time period fixed by the rule [33] is a waiver of any objection. One case has held that this was not true if the interrogatory sought privileged information or information protected by the work product rule. *Bohlin v. Brass Rail, Inc.,* [citation omitted]. Since it is quite clear that evidentiary privileges can be waived by their holder and that failure to assert them in a timely manner is a waiver, there was no reason to make an exception to the usual principle requiring timely objections ... [18]

The Wolhars argue that an objection must be raised pursuant to Rule 33 before Rule 26(b)(3) can apply because the protection afforded by Rule 26(b)(3) is not self-executing.[19] They further assert that the question of whether the protection of Rule 26(b) applies is addressed only after the answering party asserts the privilege claim in a timely and proper manner.

Citing *F.S.B. v. First Bank System,* the Wolhars note that waiver is most suitable in cases of unjustified delay, inexcusable conduct, bad faith, or when a party withholds materials without proper notice.[20] The Wolhars submit that GM's conduct throughout this case fits all of the preceding categories. The Wolhars contend that the seat strength analysis documents were within GM's control and known to the GM attorneys and staff litigating this suit. Coincidentally, several similar GM cases across the country have involved the same documents and court orders to provide these documents to opposing counsel. The Wolhars allege that GM attorneys in this action were aware of these developments but continually represented to the Court and the Wolhars that they were producing everything requested.

In response, GM argues that, although a court may find that a failure to assert a privilege in a proper and timely manner may lead to a waiver, such a finding is neither mandatory nor absolute. Instead, GM offers that waiver is only found in certain exceptional cases, such as when there has been no response of any kind to discovery or failure to follow specific orders on privilege claims. GM asserts that when a party initially fails to file a privilege log or object to discovery, the party seeking to assert the attorney-client privilege or work product doctrine may be given additional opportunities to assert the privilege and file a privilege log.[21] GM provides case law from other jurisdictions finding that even where a party failed to assert a privilege, a finding of waiver was not made, given the importance of the privilege and the work product doctrine.[22]

Distinguishing the cases cited by the Wolhars in support of their motion, GM contends that there is substantial case law supporting the three orders of the SDM with respect to the application of the work product doctrine and lack of a waiver by GM. GM distinguishes the cases that have permitted discovery of the *Hibbard* documents and similar

**17.** Super.Ct.Civ.R. 33(b)(4).

**18.** Wright & Miller, Federal Practice and Procedure: Civil 2d § 2173 (1970).

**19.** *See F.S.B. v. First Bank System,* D.Kan., 902 F.Supp. 1356, 1360 (1995).

**20.** *Id.* at 1361.

**21.** *Citing Playtex, Inc. v. Columbia Casualty Co.,* Del.Super., C.A. No. 88C–MR–233, Del Pesco, J., 1989 WL 5197 (Jan. 5, 1989).

**22.** *See, e.g., Smith v. Logansport Comm. Sch. Corp.,* N.D.Ind., 139 F.R.D. 637, 648 (1991).

litigation study documents in that these decisions hail from strict liability jurisdictions with different scopes of discovery and the vehicles involved in those cases were other than Chevrolet S–10 Blazers. ·

GM does not deny that it was aware of the *Hibbard* documents at issue prior to October 14, 1996, but asserts that does not mean that its *Wolhar* attorneys were familiar with the study or its relevance to this case. GM states that its attorneys provided the Wolhars with non-privileged materials taken from the *Hibbard* documents following upon Commissioner Reynolds' April 8, 1996 Opinion and Order.

Finally, GM notes that case law cited by the Wolhars which has found waiver of the work product doctrine occurred in jurisdictions that have adopted Federal Rule of Civil Procedure 26(b)(5). The SDM noted in his April 14, 1997 Order that 26(b)(5) specifically deals with privilege logs and the requirement to claim such privileges expressly.[23] Delaware has not adopted this procedural rule.

## DISCUSSION OF THE WOLHARS' EXCEPTIONS

■ Under Rule 26(b)(3), work product encompasses documents and tangible things prepared or accumulated by an attorney in anticipation of litigation or trial.[24] Work product materials are generally privileged from discovery by opposing parties. As a preliminary matter, materials asserted to be work product must have been prepared "in anticipation of litigation."[25] Routine business records and other materials gathered in

the ordinary course of business are not considered work product and are not protected from discovery by an opposing party.[26] With regard to the Litigation Study as contained in the *Hibbard* documents, the SDM found that although these items were largely prepared before the Wolhars' accident, as a general proposition they nonetheless constitute attorney work product in that they were gathered at the request of GM lawyers for the purpose of preparing for current and pending litigation as well as the prospect of similar litigation in the immediate future.[27] The Court agrees that the Wolhars' case falls within the category of anticipated litigation.

■ Attorney work product traditionally is accorded great protection. In order to overcome the assertion of privilege, the challenging party must show a substantial need for the protected materials and that discovery of these materials by other means would involve great expense or hardship.[28] This standard is applied to work product comprising historical or fact-based materials.[29] Work product materials that directly reflect considerations of legal strategies, tactics, and theories of the case require an even higher showing of need before the privilege may be overcome.[30]

■ In certain instances, work product privilege may be waived. For example, if the protected materials are disclosed to others with either the intention or practical result that the opposing party may see the documents or if the privileged material is intended for use as evidence in trial, the privilege is

**23.** *Wolhar v. General Motors*, Del.Super., C.A. No. 93C–04–024, Kipp, SDM (Apr. 14, 1997) (ORDER at 2).

**24.** Super.Ct.Civ.R. 26(b)(3); *See generally* 8 WRIGHT, MILLER & MARCUS, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 2024 (1994); MOORE'S FEDERAL PRACTICE § 26.70 (3d ed.1997)

**25.** *Mullins v. Vakili*, Del.Super., 506 A.2d 192, 197 (1986); *Carlton Investments v. TLC Beatrice International Holdings, Inc.*, Del.Ch., C.A. No. 13950, 1996 WL 535407 (Sept. 17, 1996). *See also FTC v. Grolier, Inc.*, U.S.Supr., 462 U.S. 19, 31, 103 S.Ct. 2209, 76 L.Ed.2d 387 (1983) (Brennan, J., concurring) (parties who face litigation of a recurring nature, such as manufacturers of consumer products, have an acute interest in keeping private the manner in which they conduct and settle their recurring legal disputes).

**26.** *See, e.g., Simon v. G.D. Searle & Co.*, 8th Cir., 816 F.2d 397, 401, *cert. denied*, 484 U.S. 917, 108 S.Ct. 268 (1987) (risk management documents prepared to keep track of and anticipate costs of liability litigation not protected from discovery).

**27.** *Wolhar*, Kipp, SDM (February 13, 1997) at 17.

**28.** Super.Ct.Civ.R. 26(b)(3).

**29.** *Tackett*, 653 A.2d at 262.

**30.** *Id.*

waived.[31] The issue of waiver may also arise in the situation where the party claiming the privilege has not adequately disclosed the existence of the privileged materials, made a timely assertion of the privilege, or adequately informed the court and the opposing party of the subject of these materials and the reasons that the privilege should apply.[32] The Wolhars' exceptions to the SDM's Orders turn on the issue of whether there is a waiver of privilege in light of GM's conduct in its responses to the Wolhars' discovery requests, motions to compel, and the Court's orders.

██ It should be noted that a finding of waiver is discretionary with the court and rarely granted, as it is a harsh result.[33] The weight of authority in this and other jurisdictions holds that waiver of privilege should be granted only in cases of the most egregious conduct by the party claiming the privilege. Less egregious conduct—where it appears that there is a genuine claim of work product privilege in which there has been discovery abuse but with no final prejudice to the party seeking waiver—is typically resolved through more remedial sanctions. Such sanctions would include further court orders to submit privilege logs specifying the privileged materials, articulation of the basis for the claims of privilege, submission of the privileged materials for *in camera* inspection by the court, a document-by-document inspection of the materials to verify the claim of privilege, and charges for costs and attorney fees against the party asserting the privilege. The Court notes that over the lengthy course of this slow-footed litigation, such sanctions have been meted out against GM on a number of occasions.

Under Federal Rule 26(b)(5), if a party withholds materials from discovery and then promptly fails to expressly claim the privilege and adequately describe the materials withheld, the privilege is waived.[34] Delaware does not have an equivalent rule that requires a descriptive summary. Rule 33(b)(4) requires that the grounds for the objection to an interrogatory be stated with "specificity," but it does not mention or require the submission of a descriptive summary of the materials withheld.[35] The Wolhars argue that the Rule implicitly requires such a descriptive summary in addition to the assertion of a specific objection. But when broad-ranging discovery requests produce substantial quantities of information (for example, thousands of documents) to which the answering party offers a work-product objection and then retains or redacts a portion of the materials as privileged, a gray area opens up in which Rules 26(b)(3) and 33(b)(4) offer no clear direction as to whether an answering party is also obliged to specify the withheld materials. The issue revolves around a question of timing: whether notice in the form of a descriptive summary of the withheld material should be released contemporaneously with a claim of privilege in response to a broad-ranging discovery request, or whether a descriptive summary need be given only after the withheld materials are specifically identified and demanded by the discovering party. Rule 34(b)(4) does not directly address this issue, and there is no express mandate in the Rule to provide a description of the withheld material. This difficulty was solved under the federal rules with the adoption of Rule 26(b)(5) in 1993.[36] To adopt the Wolhars'

**31.** *See generally* Wright, Federal Practice §§ 2016.2, 2024.

**32.** *Id.*

**33.** *See, e.g., F.S.B. v. First Bank System,* D.Kan., 902 F.Supp. 1356, 1360–61 (1995), *rev'd on other grounds,* 10th Cir., 101 F.3d 645 (1996); *B. Braun Medical, Inc. v. Abbott Laboratories,* D.E.D.Pa., 1994 WL 422287 (1994); *Smith v. Logansport Comm. Sch. Corp.,* D.N.D.Ind., 139 F.R.D. 637, 648 (1991); *Eastern Technologies, Inc. v. Chem–Solv, Inc.,* D.E.D.Pa., 128 F.R.D. 74, 75 (1989); *Smith v. MCI Telecommunications Corp.,* D.Kan., 124 F.R.D. 665, 686–87 (1989). *See also* Moore's Federal Practice § 26.90 (3d

ed.1997); Wright, Federal Practice and Procedure §§ 2016.2, 2024.

**34.** *See, supra,* note 8.

**35.** Super.Ct.Civ.R. 33(b)(4).

**36.** Delaware's lack of an equivalent rule, requiring a descriptive summary at the time privilege is claimed, unfortunately tends to promote the sort of cat-and-mouse relationship between the parties that is squarely contrary to the spirit and purpose of the rules of discovery. Modern discovery seeks to encourage the production of all information relevant to a pending action unless

interpretation of Rule 33, requiring an express claim of privilege and the contemporaneous or timely submission of a summary description of the withheld materials, in effect, asks the Court to adopt Rule 26(b)(5) of the Federal Rules. The Court declines to do so.[37]

■ In his Decision and Order, the SDM found no blanket waiver of work-product privilege because GM failed to make a timely submission of the Litigation Study privilege logs. The Court agrees with this finding. The Delaware Rules do not expressly require such a submission contemporaneously with the assertion of privilege. GM's submission of the privilege logs, late as it was in the process, was not so untimely as to require the harsh sanction of waiver. The Court further finds that the privilege log itself was sufficiently detailed as to allow the SDM and the Wolhars to ascertain the basic nature of the Litigation Study documents.[38] The *Hibbard* documents already produced for the Wolhars are *ipso facto* not work product and the Court upholds the SDM's ruling denying GM's motion for a protective order as to those particular documents.

### CONCLUSION

In view of the above discussion, GM's exception to the Special Discovery Master's finding that it waived its right to the attorney-client privilege and its motion for a protective order is DENIED. The Wolhars' exception to the Special Discovery Master's Orders of February 13, 1997, March 26, 1997 and April 14, 1997 that GM did not waive its work-product privilege, despite the late filing of a privilege log, is DENIED.

IT IS SO ORDERED.

---

clear privilege is shown. *Papen v. Suburban Propane Gas Corp.*, Del.Super., 229 A.2d 567, 570 (1967), *rev'd on other grounds*, Del.Supr., 245 A.2d 795 (1968). The adoption of Federal Rule 26(b)(5) by the Delaware courts would establish a firm basis to expedite the resolution of many privilege-related discovery abuses.

**37.** *See* 10 *Del.C.* § 561(a) (procedures for adopting new court rules).

**38.** For a discussion of the appropriate components of a privilege log, see MOORE'S FEDERAL PRACTICE § 26.90[2–3].