# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| SERVIZ, INC. | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) C.A. No. N20C-03-070 |
| THE SERVICEMASTER COMPANY, | ) PRW CCLD |
| LLC, and AMERICAN HOME SHIELD | ) |
| CORP., | ) |
| Defendants. | ) |

Submitted: November 22, 2021
Decided: December 6, 2021

## <u>MEMORANDUM OPINION AND ORDER</u>

*Upon ServiceMaster's Motion for Leave to Amend Answer to Assert Counterclaims,*
**GRANTED**

*Upon ServiceMaster's Motion to Compel,*
**GRANTED**

*Upon Serviz's Motion for a Protective Order,*
**DENIED**

Steven L. Caponi, Esq., Matthew B. Goeller, Esq., K&L Gates LLP, Wilmington, Delaware, *Counsel for Plaintiff*

John P. DiTomo, Esq., Miranda N. Gilbert, Esq., Morris, Nichols, Arsht & Tunnell LLP, Wilmington, Delaware, Lynn K. Neuner, Esq., Rachel S. Bradley, Esq., Simpson Thatcher & Bartlett LLP, New York, New York, *Counsel for Defendants*

**WALLACE, J.**

This case arises from an aborted acquisition of plaintiff Serviz, Inc. by defendant The ServiceMaster Company, LLC. Before the Court are three motions: ServiceMaster's motion for leave to amend its Answer to bring counterclaims,[1] ServiceMaster's motion to compel,[2] and Serviz's motion for a protective order.[3] The dispositive question for each motion is whether Serviz may assert the attorney-client privilege with respect to emails that Serviz disclosed when it transferred the server containing them pursuant to an Asset Purchase Agreement. For the reasons explained below, the Court holds that Serviz waived the attorney-client privilege with respect to the contents of the server when it transferred that server on July 20, 2018. Accordingly, ServiceMaster's two motions are **GRANTED** and Serviz's motion is **DENIED**.

## I. FACTUAL BACKGROUND

### A. EVENTS PRECIPITATING THE DISCOVERY DISPUTE

The parties signed a letter of intent in 2018. That LOI contemplated that ServiceMaster would acquire Serviz and that they "shall endeavor to Close the Acquisition by the end of the Exclusivity Period."[4] Too, the LOI prohibited Serviz

---

[1] D.I. 63.

[2] D.I. 71.

[3] D.I. 75.

[4] First Am. Cmpl. at ¶ 55 (D.I. 13).

from discussing a potential sale with any buyer other than ServiceMaster during the Exclusivity Period.[5]  In its Complaint, Serviz alleges ServiceMaster breached the LOI by calling a halt to the acquisition on May 3, 2018.[6]  The acquisition was never finalized.

Facing financial straits, Serviz arranged a fire sale of the company's assets. On July 20, 2018, Serviz entered an Assignment for the Benefit of Creditors with Insolvency Services Group ("ISG").  ISG acquired "all of the property and assets of Serviz "of every kind and nature."[7]  Concurrently, ISG sold most of Serviz's assets to a subsidiary of Porch.com under an Asset Purchase Agreement negotiated by Serviz.[8]  The assets that Porch acquired included Serviz's IT systems and servers, which still contained privileged communications between Serviz and its attorneys.[9]

At argument, Serviz explained it approached these transactions from a position of weakness and desperation.  It knew the server might contain privileged documents, but lacked the money, personnel, and time to locate and remove them.

---

[5]  *Id.* at ¶ 54.

[6]  *Id.* at ¶¶ 90–111; *see also* D.I. 31 (granting ServiceMaster's motion to dismiss with respect to Counts II and III of the First Amended Complaint).

[7]  Serviz's Mot. for Protective Order, Decl. of Michael Kline, Ex. 3 at 1 (General Assignment) (D.I. 77).

[8]  *Id.*, Ex. 4 (Porch APA).

[9]  *Id.* at ¶ 4.

And although Serviz requested that its emails be excluded from the APA, Porch refused. Serviz decided to concede the issue because it believed it would go out of business unless it closed the APA. So Serviz negotiated only for the right to "retain copies of all electronic communications related to [Serviz] for archival and potential litigation defense purposes."[10] Serviz preserved its copies on the laptops and hard drives of its then-CEO, President, and in-house counsel.[11]

Serviz acquired the litigation rights related to the LOI from ISG in August 2019[12] and filed its Complaint against ServiceMaster in March 2020.[13] Shortly thereafter, in May 2020, Porch entered an Asset Purchase Agreement with Frontdoor Inc., an affiliate of ServiceMaster.[14] The assets that Frontdoor acquired included the server containing Serviz's communications with its attorneys.

Serviz claims it did not know at the time that Frontdoor possessed any of its communications.[15] Nevertheless, Serviz subpoenaed Frontdoor for all "communications" and "documents" that "Frontdoor acquired when it purchased the

---

[10]  *Id.*, Decl. of Michael Kline, Ex. 4 at § 1.2.

[11]  *Id.* at ¶ 3.

[12]  *Id.*, Decl. of Michael Kline, Ex. 5 (Assignment and Assumption Agreement).

[13]  Cmpl. (D.I 1); *see also* First Am. Cmpl.

[14]  ServiceMaster's Mot. to Compel, Ex. 4 (Asset Purchase Agreement).

[15]  Serviz's Mot. for Protective Order at ¶ 7.

assets of Serviz from Porch.com" on March 18, 2021[16]  Frontdoor responded it would produce only documents "[c]oncerning Defendants' potential acquisition of Serviz" from the server.[17]  Frontdoor then produced the documents and communications between August 18 and September 8, 2021.

Serviz produced its privilege log on August 23, 2021.  The privilege log included 1,147 rows of documents dated on or before July 20, 2018, the date of the assignment to ISG and the transfer to Porch.  These documents were the copies of the documents and communications Serviz had retained after its APA with Porch.[18]

ServiceMaster reviewed the versions of these documents and communications that were on the server.  ServiceMaster claims to have discovered emails proving Serviz breached the LOI by discussing a potential sale with a third party during the Exclusivity Period.  During the negotiations, Serviz's counsel allegedly drafted an agreement requesting that ServiceMaster consent to Serviz's future solicitation of a sale and that ServiceMaster waive any breach of the LOI related to such discussions. Although Serviz never presented the draft agreement to ServiceMaster,

---

[16]   ServiceMaster's Mot. to Compel, Ex. 5 at 9 (Responses and Objections to Subpoena *Duces Tecum*).

[17]   *Id.*, Ex. 5 at 9–10.

[18]   ServiceMaster's Mot. to Compel at ¶ 9.

- 4 -

ServiceMaster believes the emails are a "smoking-gun admission" that Serviz breached the LOI.[19]

## B. MOTIONS BEFORE THE COURT

On October 22, 2021, ServiceMaster moved for leave to amend its Answer to assert counterclaims against Serviz.[20] Count I of the proposed counterclaims seeks a declaration that the LOI is null and void because Serviz materially breached the Exclusivity Period in the LOI.[21] Count II alleges Serviz breached the LOI through its negotiations with the third-party buyer.[22] Count III alleges Serviz's conduct breached the implied covenant of good faith and fair dealing, even if it did not breach the express terms of the LOI.[23] The proposed amendments quote from the emails that ServiceMaster found on the server and attach several of them as exhibits.[24]

Serviz claims it did not discover ServiceMaster possessed its communications until ServiceMaster filed the motion.[25] Serviz informed ServiceMaster it would not

---

[19]    *Id.* at ¶ 2.

[20]    ServiceMaster's Mot. for Leave to Amend Answer (D.I. 63).

[21]    *Id.*, Ex. A at ¶¶ 45–50.

[22]    *Id.*, Ex. A at ¶¶ 51–55.

[23]    *Id.*, Ex. A at ¶¶ 56–62.

[24]    Serviz's Opp. to ServiceMaster's Mot. for Leave to Amend Answer at ¶ 6 (D.I. 74).

[25]    Serviz's Opp. to ServiceMaster's Mot. to Compel at ¶ 8 (D.I. 84).

oppose the amendments if ServiceMaster extracted the information it believed to be privileged.[26] Serviz filed its opposition brief after ServiceMaster refused. Too, Serviz moved for a protective order requiring ServiceMaster to return and/or destroy its purportedly privileged documents.[27] Finally, ServizeMaster filed a motion to compel with respect to the 1,147 rows of documents listed in Serviz's privilege log.[28]

The Court heard argument for the three motions last month.[29]

## II. THE PARTIES' CONTENTIONS

Each of the motions turns on whether Serviz may assert the attorney-client privilege with respect to the communications stored on the server. First, Serviz argues ServiceMaster's motion for leave to amend its Answer should be denied because "[a]llowing [ServiceMaster] to file the proposed counterclaims would unduly prejudice Serviz because the counterclaims improperly attach, incorporate or quote from privileged documents."[30] Second, Serviz argues its motion for a protective order should be granted because ServiceMaster "seek[s] to both continue to improperly utilize Serviz's privileged communications and seek additional

---

[26] Serviz's Opp. to ServiceMaster's Mot. for Leave to Amend Answer at ¶ 4.

[27] Serviz's Mot. for Protective Order (D.I. 75).

[28] ServiceMaster's Mot. to Compel (D.I 71).

[29] D.I. 86.

[30] Serviz's Opp. to ServiceMaster's Mot. for Leave to Amend Answer at ¶ 6.

privileged communications."[31]   Third, Serviz argues ServiceMaster's motion to compel should be denied because ServiceMaster seeks privileged documents.[32]

The parties agree the communications on the server were privileged before Serviz transferred its assets to Porch, but ServiceMaster argues Serviz lost any claim of privilege on the transfer date.  First, ServiceMaster contends Serviz transferred the right to assert the attorney-client privilege by transferring control of its business.[33]  This argument relies upon ServiceMaster's interpretation of California law, which the parties agree governs the transactions with ISG and Porch through choice-of-law provisions in the relevant agreements.  Alternatively, ServiceMaster contends Serviz waived privilege due to its voluntary disclosure of the communications to Porch and its failure to preserve and timely assert the privilege.[34] The parties agree Delaware law governs the issue of waiver and this action.

On the issue of transfer, Serviz contends ServiceMaster's argument is contrary to controlling California case law.  On waiver, Serviz argues it should not be penalized for "inadvertently" transferring the privileged communications.[35]   In

---

[31]   Serviz's Mot. for Protective Order at ¶ 10.

[32]   Serviz's Opp. to ServiceMaster's Mot. to Compel at 1.

[33]   ServiceMaster's Mot. to Compel at ¶¶ 12–13.

[34]   *Id.* at ¶¶ 14–18.

[35]   Serviz's Opp. to ServiceMaster's Mot. to Compel at ¶ 15.

Serviz's view, a finding of waiver under these circumstances would place a draconian burden on sellers to scrub their digital assets of privileged documents and chill communications between such sellers and their attorneys.[36] Serviz adds that it acted promptly to preserve the privilege when it learned ServiceMaster possessed the communications by objecting and seeking a protective order.

## III. APPLICABLE LEGAL STANDARDS

Civil Rule 15(a) provides that leave to amend a pleading "shall be freely given when justice so requires."[37] But denial of a motion for leave is proper where there's "evidence of undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies, prejudice, futility, or the like."[38]

Civil Rule 26 provides that the Court may, "for good cause shown, . . . make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden . . ., including . . . [t]hat the discovery not be had."[39] Rule 26 further prohibits the discovery of privileged information.[40]

---

[36] *See id.* at ¶¶ 17–18.

[37] Del. Super. Ct. Civ. R. 15(a).

[38] *Parker v. State*, 2003 WL 24011961, at *3 (Del. Super. Ct. Oct. 14, 2003) (internal citations omitted).

[39] Del. Super. Ct. Civ. R. 26(c).

[40] Del. Super. Ct. Civ. R. 26(b)(1).

# IV. DISCUSSION

The key to each of the pending motions is whether Serviz may assert the attorney-client privilege with respect to the communications on the server. While the Court is not entirely convinced ServiceMaster's transfer argument reflects an accurate interpretation of California law, this is an issue that need not be decided. As detailed below, Serviz waived the attorney-client privilege when it intentionally disclosed the communications to Porch on July 20, 2018.

## A. SERVIZ WAIVED THE ATTORNEY-CLIENT PRIVILEGE

The burden of proving that the attorney-client privilege applies to a particular communication is on the party asserting the privilege.[41] In Delaware, waiver occurs when a privilege holder "intentionally discloses or consents to disclosure of any significant part of the privileged or protected communication or information."[42] A disclosure operates as a waiver unless "(1) the disclosure is inadvertent; (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and (3) the holder promptly took reasonable steps to rectify the error."[43]

---

[41] *Moyer v. Moyer*, 602 A.2d 68, 72 (Del. 1992) (internal citations omitted).

[42] D.R.E. 510(a); *see also Ryan v. Gifford*, 2008 WL 43699, at *6 (Del. Ch. Jan. 2, 2008) ("Disclosure to outsiders has never failed to waive privilege under Delaware law.").

[43] D.R.E. 510(c).

Without question, Serviz disclosed the communications when it transferred the server to Porch. But was that disclosure intentional or inadvertent? Serviz insists it "did not intend to provide Porch with its privileged communications, or in any way believe . . . [it] would somehow waive its ability to assert attorney-client privilege over communications related to the LOI or this dispute."[44] Instead, Serviz emphasizes that "[g]iven the urgency of the situation . . . it simply would not have been practical to segregate out privileged communications" before the transfer to Porch.[45]

That may be. But no doubt, Serviz's disclosure of the privileged communications was intentional. Serviz transferred the server pursuant to an APA that Serviz itself negotiated. And during those negotiations, Serviz knew the server likely contained privileged communications but says it lacked the resources to locate and remove them. Porch rejected Serviz's specific request that its emails be excluded from the APA. And Serviz then decided to move forward with the transaction anyway. Under these facts, Serviz's decision to transfer the server to Porch operated as an intentional disclosure of the communications and therefore a waiver of the attorney-client privilege.

---

[44] Serviz's Mot. for Protective Order, Decl. of Michael Kline at ¶ 15.

[45] *Id.*

At argument, the Court asked Serviz whether its transfer of the communications could fairly be characterized as knowing, even if reluctant. Tellingly, Serviz declined to answer directly. Serviz instead pointed the Court to *Postorivo v. AG Paintball Holdings, Inc.*,[46] which Serviz claims to be on-point. There, the plaintiffs sold substantially all of their assets to the defendants under an APA. When the parties later became embroiled in a contract indemnity action, the question arose of who held the attorney-client privilege as to various classes of communications. The Court of Chancery noted that the parties agreed the plaintiffs held the privilege for communications they had with counsel regarding "the negotiation of the APA, related contracts, and the acquisition in general."[47] The court then added a footnote rejecting the defendants' argument that plaintiffs had waived privilege for any such documents that remained on the computers or servers that had been transferred to the defendants. The court stated simply that "the circumstances do not support a reasonable inference that Plaintiffs deliberately and voluntarily relinquish[ed] the right to assert their claims of privilege . . ."[48] Nowhere else in the opinion does the court discuss waiver.

---

[46]  2008 WL 343856 (Del. Ch. Feb. 7, 2008).

[47]  *Id.* at *4.

[48]  *Id.* at *4 n.13.

The Court declines to join Serviz and ServiceMaster in combing through transcripts of hearings to decipher the footnote in *Postorivo*. It is sufficient to say that the facts of the current dispute support a reasonable inference that Serviz did deliberately and voluntarily relinquish its right to assert the attorney-client privilege. Serviz negotiated the Porch APA as a sophisticated party represented by counsel. Serviz might have preferred that its emails be excluded from the transaction. Indeed, it expressly tried to exclude them from the sale. But when Porch resisted, Serviz made a calculated decision to concede the issue to close the deal. Serviz may not have fully anticipated the consequences of this decision at the time,[49] but it must now live with them.[50]

Additionally, Serviz urges the Court to consider the steps it took to prevent disclosure and to rectify the "error."[51] But there was no error here because Serviz's disclosure of the emails was intentional, not inadvertent. The same can be said for

---

[49] Although perhaps it should have. Serviz stated that "while [it] had not decided to bring a claim, Serviz informed ISG in connection with the General Assignment that Serviz believed Defendants had acted in bad faith and this potential claim was not transferred to Porch." Serviz's Mot. for Protective Order at ¶ 17. If Serviz was considering a future claim against ServiceMaster while negotiating the APA, it should have been particularly alert as to issues of privilege and waiver. Indeed, Serviz bargained for the right to "retain copies of all electronic communications related to [Serviz] for archival *and potential litigation defense purposes*." Serviz's Mot. for Protective Order, Decl. of Michael Kline, Ex. 4 at § 1.2 (emphasis added).

[50] *See, e.g., Hunterheart v. Bio-Reference Labs, Inc.*, 2015 U.S. Dist. LEXIS 123921, at *5 (N.D. Cal. Sept. 16, 2015) (holding that sophisticated parties intentionally waived the attorney-client privilege with respect to emails by transferring them to a buyer pursuant to an APA).

[51] Serviz's Mot. for Protective Order at ¶¶ 18–19.

Serviz's argument that the Court should assess the "overall fairness" of finding waiver,[52] which is a standard that applies only to inadvertent disclosures.[53]

Finally, Serviz argues the Court should not find waiver because Serviz engaged in no "egregious conduct."[54] But the standard to which Serviz refers applies to situations of court-ordered waiver when a party abuses the discovery process.[55] It is not a standard to be applied in cases of intentional disclosure such as this. The fact of the matter is that "[d]isclosure to outsiders has never failed to waive privilege under Delaware law."[56]

## B. THE COURT LIMITS ITS HOLDING TO THE COMMUNICATIONS SERVIZ TRANSFERRED TO PORCH

At argument, confusion arose as to the scope of the waiver and which documents ServiceMaster seeks to use. Serviz noted that ServiceMaster had argued in its briefing that the waiver "includes not just the specific documents on the Server

---

[52] *Id.* at ¶ 20 (citing *In re Kent Cty. Adequate Pub. Facilities Ordinances Litig.*, 2008 WL 1851790, at *5 (Del. Ch. Apr. 18, 2008)).

[53] *See In re Kent Cty.*, 2008 WL 1851790, at *5 (noting that "overall fairness" is factor in deciding whether an "inadvertent disclosure" constitutes a waiver); *see also Jefferson v. Dominion Holdings, Inc.*, 2013 WL 6576790, at *2 (Del. Ch. Dec. 13, 2013) (same).

[54] *See Wohlar v. Gen. Motors Corp.*, 712 A.2d 457, 463 (Del. Super. Ct. 1997).

[55] *See id.* (discussing "egregious conduct" in the context of discovery abuses and sanctions); *Dyncorp v. Underwriters at Lloyd's, London*, 2014 WL 4656393, at *1 (Del. Super. Ct. Sept. 18, 2014); *TCV VI, L.P. v. TradingScreen Inc.*, 2015 WL 5674874, at *7–8 (Del. Ch. Sept. 25, 2015).

[56] *Ryan v. Gifford*, 2008 WL 43699, at *6 (Del. Ch. Jan. 2, 2008).

but any 'matters that directly relate to the subject matter encompassed by the disclosed communication.'"[57] But ServiceMaster then appeared to abandon this position, explaining that it was *only* looking for the documents on the server. ServiceMaster never said it seeks any "undisclosed communications or information concern[ing] the same subject matter."[58]

For the sake of clarity, the Court re-iterates that Serviz waived the attorney-client privilege with respect to the documents and communications that were stored on the server that it transferred to Porch. The Court need not concern itself with any other documents or communications because the parties don't now seem to be asking it to.

## C. RULING ON THE MOTIONS BEFORE THE COURT

With the waiver issue resolved, the Court turns to the pending motions. Serviz opposed ServiceMaster's motion for leave to amend its Answer on the grounds that the proposed amendments quote from and attach privileged communications. But the communications that ServiceMaster cites in the proposed amendments come from the server that Serviz disclosed to Porch. Therefore, the proposed amendments

---

[57] ServiceMaster's Mot. to Compel at ¶ 18 (quoting *E. Com. Realty Corp. v. Fusco*, 1987 WL 9603, at *3–4 (Del. Super. Ct. Apr. 13, 1987)).

[58] *See* D.R.E. 510(b) ("When the disclosure waives a privilege . . . the waiver extends to an undisclosed communication or information only if: (1) the waiver is intentional; (2) the disclosed and undisclosed communications or information concern the same subject matter; and (3) they ought in fairness to be considered together.").

raise no issues of privilege or prejudice. ServiceMaster's motion for leave to amend its Answer is **GRANTED**.

ServiceMaster's motion to compel targeted rows 1 to 1,147 of Serviz's privilege log on the basis that Serviz either transferred or waived the attorney-client privilege with respect to each of the documents listed. The Court understands rows 1 to 1,147 of Serviz's privilege log as being Serviz's copies of the communications that it transferred to Porch along with the server. Therefore, ServiceMaster is correct that they are not privileged. ServiceMaster's motion to compel is **GRANTED**.

Finally, Serviz's motion for a protective order targeted the communications on the server that ServiceMaster from Porch, which Serviz believed still to be privileged. As established, Serviz is incorrect. Serviz's motion for a protective is **DENIED**.

## V. CONCLUSION

For the foregoing reasons, ServiceMaster's motion for leave to amend its Answer is **GRANTED**; ServiceMaster's motion to compel is **GRANTED**;[59] and

---

[59] ServiceMaster also requested that the Court "under Del. Super. Ct. Civ. R. 37(a)(4)(A), award costs and attorneys' fees incurred in bringing this motion." ServiceMaster's Mot. to Compel at ¶ 19. Rule 37(a)(4)(A) instructs a judge granting a motion to compel to "require the party or deponent whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay the moving party the reasonable expenses incurred in obtaining the order, including attorney's fees, *unless the Court finds that the opposition to the motion was substantially justified or that other circumstances make an award of expenses unjust*." (emphasis added).

Serviz's opposition was substantially justified because ServiceMaster waited until after it filed its motion to amend to demand that Serviz remove the documents from its privilege log. "Discovery

Serviz's motion for a protective order is **DENIED**.  Accordingly, Serviz is ordered to produce, in redacted form, rows 1 to 1,147 of its privilege log.

**IT IS SO ORDERED.**

Paul R. Wallace, Judge

Original to Prothonotary

cc: All Counsel via File and Serve

---

is intended to be a cooperative and self-regulating process," and "cooperation and communication among the parties are essential during discovery."  *Cartanza v. Cartanza*, 2013 WL 1615767, at *2 (Del. Ch. Apr. 16, 2013) (internal citations and quotations omitted).  While it may have been ultimately successful on its motions, ServiceMaster's handling of the particulars of this discovery skirmish could have better-incorporated those principles and possibly avoided it.  In turn, the specific circumstances here make an award of expenses unjust. No attorney's fees are awarded.